# United States District Court
## District of Utah



**D. Mark Jones**
Clerk of Court

**Anne W. Morgan**
Chief Deputy Clerk

March 26, 2021

Karra J. Porter
CHRISTENSEN & JENSEN PC
257 E 200 S STE 1100
SALT LAKE CITY, UT 84111

R. Blake Hamilton
DENTONS DURHAM JONES & PINEGAR PC
111 S MAIN ST STE 2400
SALT LAKE CITY, UT 84110-4050

RE:     NOTICE OF APPEAL
        Chilcoat v. San Juan County et al
        Defendant/Appellant  Plaintiff/Appellee
        Lower Docket: 4:19cv00027 DN

The notice of appeal for this case has been filed.

**RETAINED** Counsel for the appellant is instructed to download the "Initial Appeal Documents and Instructions" for this appeal from www.ca10.uscourts.gov  In addition, counsel will need to download the "Designation of Record" form from the 10th Circuit web site.   Please follow the instructions for Transcript Order Form and Docketing Statement (for appellant only) regarding counsel's responsibility for compliance. For specific requirements concerning transcripts, records on appeal, briefs and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

Counsel and the Tenth Circuit will receive the following via CM/ECF (If counsel or party are not e-filers, they will receive these documents by mail): Order/Judgment being appealed from, Notice of Appeal, Letter of Transmission of the Preliminary Record on Appeal, Docket Sheet. This case does not contain any sealed entries or documents.

Sincerely,

D. Mark Jones, Clerk

By: /s/Aimee Trujillo
Aimee Trujillo
Deputy Clerk

**cc**: Clerk, U.S. Court of Appeals, Tenth Circuit
Court Reporter: Kelly Hicken
District: 1088
Jurisdiction: Federal Question

Judge David Nuffer
Counsel of Record
Division: Southern Region
Fee Status: Paid

Orrin G. Hatch United States Courthouse • 351 S. West Temple, Rm 1.100, Salt Lake City, UT 84101 • (801) 524-6100 • www.utd.uscourts.gov

APPEAL,CLOSED,LC2,LOC_SGU

Email All Attys
Email All Attys and Secondary Emails

# US District Court Electronic Case Filing System
## District of Utah (Southern Region)
## CIVIL DOCKET FOR CASE #: <u>4:19–cv–00027–DN</u>

| | |
|---|---|
| Chilcoat v. San Juan County et al | Date Filed: 04/10/2019 |
| Assigned to: Judge David Nuffer | Date Terminated: 02/24/2021 |
| Cause: 42:1983 Civil Rights Act | Jury Demand: Plaintiff |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Rosalie Chilcoat** <br> *an individual* | represented by | **Karra J. Porter** <br> CHRISTENSEN & JENSEN PC <br> 257 E 200 S STE 1100 <br> SALT LAKE CITY, UT 84111 <br> (801)323–5000 <br> Email: <u>karra.porter@chrisjen.com</u> <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Jacob W. Macfarlane** <br> CHRISTENSEN & JENSEN PC <br> 257 E 200 S STE 1100 <br> SALT LAKE CITY, UT 84111 <br> (801)323–5000 |
| | | **John D. Lauritzen** <br> CHRISTENSEN & JENSEN PC <br> 257 E 200 S STE 1100 <br> SALT LAKE CITY, UT 84111 <br> (801)323–5000 <br> Email: <u>jd.lauritzen@chrisjen.com</u> <br> *ATTORNEY TO BE NOTICED* |
| | | **Patrick A. Shea** <br> PATRICK A SHEA PC <br> 252 S 1300 E STE A <br> SALT LAKE CITY, UT 84102 <br> 801–582–0949 <br> Email: <u>pas@patshealaw.com</u> <br> *ATTORNEY TO BE NOTICED* |

V.

**<u>Defendant</u>**

represented by

**San Juan County**
*a political subdivision of the state of Utah*

**R. Blake Hamilton**
DENTONS DURHAM JONES &
PINEGAR PC
111 S MAIN ST STE 2400
PO BOX 4050
SALT LAKE CITY, UT 84110–4050
(801)415–3000
Email: blake.hamilton@dentons.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley M. Gregson**
DENTONS DURHAM JONES &
PINEGAR PC
111 S MAIN ST STE 2400
PO BOX 4050
SALT LAKE CITY, UT 84110–4050
(801)415–3000
Email: ashley.gregson@dentons.com
*ATTORNEY TO BE NOTICED*

**Ryan M. Stephens**
DENTONS DURHAM JONES &
PINEGAR PC
111 S MAIN ST STE 2400
PO BOX 4050
SALT LAKE CITY, UT 84110–4050
(801)415–3000
Email: ryan.stephens@dentons.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kendall G. Laws**    represented by **R. Blake Hamilton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley M. Gregson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan M. Stephens**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zane Odell**    represented by **Jay M. Philpot**
JM PHILPOT LAW
620 E 100 N
ALPINE, UT 84004
(801)891–4499

Email: jmorganphilpot@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorne Grant Hiller**
KING & BALLOW
315 UNION ST STE 1100
NASHVILLE, TN 37201
615–726–5532
Email: lorne@wegscar.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin M. Wegener**
WEGENER SCARBOROUGH YOUNGE
& HOCKENSMITH LLP
743 HORIZON CT STE 200
GRAND JUNCTION, CO 81506
970–242–2645
Email: ben@wegscar.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Zane Odell**                    represented by **Jay M. Philpot**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorne Grant Hiller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin M. Wegener**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Mark Franklin**                    represented by **David S. Bridge**
SCALLEY READING BATES HANSEN
& RASMUSSEN PC
15 W SO TEMPLE STE 600
SALT LAKE CITY, UT 84101
(801)531–7870
Email: dbridge@scalleyreading.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica J. Johnston**
STRONG & HANNI
102 S 200 E STE 800
SALT LAKE CITY, UT 84111
(801)532–7080
Email: jjohnston@strongandhanni.com
*TERMINATED: 03/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin A. VanOrman**
STRONG & HANNI
102 S 200 E STE 800
SALT LAKE CITY, UT 84111
(801) 532–7080
Email: kvanorman@strongandhanni.com
*TERMINATED: 03/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rosalie Chilcoat**                     represented by   **David S. Bridge**
*an individual*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Karra J. Porter**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kristin A. VanOrman**
                                                         (See above for address)
                                                         *TERMINATED: 03/19/2020*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jacob W. Macfarlane**
                                                         (See above for address)

                                                         **Jessica J. Johnston**
                                                         (See above for address)
                                                         *TERMINATED: 03/19/2020*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **John D. Lauritzen**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Patrick A. Shea**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/10/2019 | 1 | | Case has been indexed and assigned to Judge David Nuffer. Plaintiff Rosalie Chilcoat is directed to E–File the Complaint  and cover sheet (found under Complaints and Other Initiating Documents) and pay the filing fee of $ 400.00 by the end of the business day.<br>NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system.<br>Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (nl) (Entered: 04/10/2019) |
| 04/10/2019 | 2 | | COMPLAINT *and Jury Demand* against Kendall G. Laws, Zane Odell, San Juan County (Filing fee $ 400, receipt number 1088–3247509) filed by Rosalie Chilcoat. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet) Assigned to Judge David Nuffer (Porter, Karra) (Entered: 04/10/2019) |
| 04/11/2019 | 3 | | ORDER TO PROPOSE SCHEDULE – Plaintiff must propose a schedule to defendant in the form of a draft Attorney Planning Meeting Report within the earlier of fourteen (14) days after any defendant has appeared or twenty–eight (28) days after any defendant has been served with the complaint. See order for additional instructions. Signed by Judge David Nuffer on 4/11/19 (alt) (Entered: 04/11/2019) |
| 04/11/2019 | 4 | | DOCKET TEXT ORDER REFERRING CASE to Magistrate Judge Paul Kohler under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. So ordered by Judge David Nuffer on 4/11/19 (docket text only – no attached document) (alt) (Entered: 04/11/2019) |
| 05/02/2019 | 5 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to San Juan County.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 05/02/2019) |
| 05/02/2019 | 6 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Kendall G. Laws.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 05/02/2019) |
| 05/02/2019 | 7 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Zane Odell.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 05/02/2019) |

| 05/31/2019 | 8 | | Defendant's MOTION for Extension of Time to File Answer re 2 Complaint, filed by Defendant Zane Odell. (Attachments: # 1 Text of Proposed Order Order re: Defendant Zane Odell's Unopposed Motion for Extension of Time to Provide Response to Plaintiff's Complaint) Motions referred to Paul Kohler. Attorney Lorne Grant Hiller added to party Zane Odell(pty:dft)(Hiller, Lorne) (Entered: 05/31/2019) |
|---|---|---|---|
| 06/03/2019 | 9 | | CLERKS ORDER re 8 MOTION for Extension of Time to File Answer re 2 Complaint; signed by AWM, Chief Deputy Clerk, Answer deadline updated for Zane Odell – answer due 6/18/2019 (alt) (Entered: 06/03/2019) |
| 06/03/2019 | 10 | | ANSWER to Complaint with Jury Demand filed by Kendall G. Laws, San Juan County. Attorney R. Blake Hamilton added to party Kendall G. Laws(pty:dft), Attorney R. Blake Hamilton added to party San Juan County(pty:dft)(Hamilton, R.) (Entered: 06/03/2019) |
| 06/04/2019 | 11 | | **NOTICE OF HEARING**: <br><br> Case Management Conference set for Thursday, 8/8/2019 at 11:00 AM in Room 2B (St George) before Judge David Nuffer. The Attorney Planning Meeting Report must be filed and the Proposed Scheduling Order must be emailed in word processing format to dj.nuffer@utd.uscourts.gov at least one week before the Conference. <br><br> Court Address: 206 West Tabernacle, St George, Utah (asb) (Entered: 06/04/2019) |
| 06/18/2019 | 12 | | Second MOTION for Extension of Time to File Answer re 2 Complaint, filed by Defendant Zane Odell. (Attachments: # 1 Text of Proposed Order re: Defendant Zane Odell's Second Unopposed Motion for Extension of Time to Provide Response to Plaintiff's Complaint) Motions referred to Paul Kohler.(Hiller, Lorne) (Entered: 06/18/2019) |
| 06/19/2019 | 13 | | ORDER granting 12 Motion for Extension of Time to Answer re 2 Complaint. Answer deadline updated for Zane Odell – answer due 7/2/2019. Signed by Magistrate Judge Paul Kohler on 6/19/19 (alt) (Entered: 06/19/2019) |
| 07/01/2019 | 14 | | NOTICE of Appearance by Jay M. Philpot on behalf of Zane Odell (Philpot, Jay) (Entered: 07/01/2019) |
| 07/01/2019 | 15 | | Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Defendant Zane Odell. (Hiller, Lorne) (Entered: 07/01/2019) |
| 07/03/2019 | 16 | | **AMENDED NOTICE OF HEARING**: <br><br> Case Management Conference re−set for 8/22/2019 at 11:00 AM in Room 2B (St George) before Judge David Nuffer. The Attorney Planning Meeting Report must be filed and the Proposed Scheduling Order must be emailed in word processing format to dj.nuffer@utd.uscourts.gov at least one week before the Conference. <br><br> **NOTE: THIS HEARING WILL BE HELD IN CONJUNCTION WITH THE MOTION HEARING re: 15 MOTION TO DISMISS.** (rlr) (Entered: 07/03/2019) |

| 07/03/2019 | 17 | | **NOTICE OF HEARING ON MOTION** re: 15 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . Motion Hearing set for 8/22/2019 at 11:00 AM in Room 2B (St George) before Judge David Nuffer. **NOTE: THIS HEARING WILL BE HELD IN CONJUNCTION WITH THE CASE MANAGEMENT CONFERENCE.** (rlr) (Entered: 07/03/2019) |
| --- | --- | --- | --- |
| 07/05/2019 | 18 | | NOTICE of Appearance by Ashley M. Gregson on behalf of Kendall G. Laws, San Juan County (Gregson, Ashley) (Entered: 07/05/2019) |
| 07/08/2019 | 19 | | MOTION for Admission Pro Hac Vice of Benjamin M. Wegener , Registration fee $ 250, receipt number 1088–3318818, filed by Defendant Zane Odell. (Attachments: # 1 Exhibit A – Application for Pro Hac Vice Admission, # 2 Exhibit B – Oder for Pro Hac Vice Admission)(Hiller, Lorne) (Entered: 07/08/2019) |
| 07/09/2019 | 20 | | DOCKET TEXT ORDER granting 19 Motion for Admission Pro Hac Vice of Benjamin M. Wegener for Zane Odell. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* So ordered by Magistrate Judge Paul Kohler on 7/8/19 (docket text only – no attached document) (alt) (Entered: 07/09/2019) |
| 07/10/2019 | 21 | | MOTION for Judgment on the Pleadings and Memorandum in Support filed by Defendants Kendall G. Laws, San Juan County. (Attachments: # 1 Exhibit A – Transcript of Preliminary Injunction Hearing)(Hamilton, R.) (Entered: 07/10/2019) |
| 07/15/2019 | 22 | | Stipulated MOTION to Continue Case Management Conference and Motions Hearing filed by Defendant Zane Odell. (Attachments: # 1 Text of Proposed Order re Stipulated Motion to Continue Case Management Conference and Motions Hearing) Motions referred to Paul Kohler.(Hiller, Lorne) (Entered: 07/15/2019) |
| 07/15/2019 | 23 | | ORDER granting 22 Motion to Continue Hearings. Signed by Magistrate Judge Paul Kohler on 7/15/19 (alt) (Entered: 07/15/2019) |
| 07/15/2019 | | | **Reset Hearings per 23 Order:** Case Management Conference reset for 9/5/2019 at 09:00 AM in Room 2B (St George) before Judge David Nuffer; Motion Hearing on 15 Defendant's MOTION to Dismiss for Failure to State a Claim, 21 MOTION for Judgment on the Pleadings reset for 9/5/2019 at 09:00 AM in Room 2B (St George) before Judge David Nuffer (alt) (Entered: 07/15/2019) |
| 07/25/2019 | 24 | | Stipulated MOTION for Telephonic Hearing filed by Defendants Kendall G. Laws, San Juan County. (Attachments: # 1 Text of Proposed Order Proposed Order) Motions referred to Paul Kohler.(Hamilton, R.) Modified on 7/29/2019: updated motion relief to reflect relief motion requested in motion (alt) (Entered: 07/25/2019) |
| 07/29/2019 | 25 | | ORDER denying 24 Motion for Telephonic Hearing. Signed by Magistrate Judge Paul Kohler on 7/29/19 (alt) (Entered: 07/29/2019) |
| 07/29/2019 | | | **Reset Hearings per 25 Order:** Case Management Conference reset for 10/3/2019 at 11:00 AM in Room 2B (St George) before Judge David Nuffer. |

| | | | Motion Hearing on 15 Defendant's MOTION to Dismiss for Failure to State a Claim, 21 MOTION for Judgment on the Pleadings reset for for 10/3/2019 at 11:00 AM in Room 2B (St George) before Judge David Nuffer. (alt) (Entered: 07/29/2019) |
|---|---|---|---|
| 07/29/2019 | 26 | | MEMORANDUM in Opposition re 15 Defendant's MOTION to Dismiss for Failure to State a Claim filed by Plaintiff Rosalie Chilcoat. (Porter, Karra) (Entered: 07/29/2019) |
| 08/07/2019 | 27 | | Stipulated MOTION for Extension of Time to File Response/Reply as to 21 MOTION for Judgment on the Pleadings filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Text of Proposed Order Proposed Order on Stipulated Motion for Extension of Time) Motions referred to Paul Kohler.(Porter, Karra) (Entered: 08/07/2019) |
| 08/12/2019 | 28 | | Defendant's REPLY to Response to Motion re 15 Defendant's MOTION to Dismiss for Failure to State a Claim filed by Defendant Zane Odell. (Hiller, Lorne) (Entered: 08/12/2019) |
| 08/14/2019 | 29 | | MEMORANDUM in Opposition re 21 MOTION for Judgment on the Pleadings filed by Plaintiff Rosalie Chilcoat. (Porter, Karra) (Entered: 08/14/2019) |
| 08/20/2019 | 30 | | ORDER granting 27 Motion for Extension of Time to File Response/Reply re 21 MOTION for Judgment on the Pleadings: Response due by 8/14/2019. Signed by Magistrate Judge Paul Kohler on 8/20/19 (alt) (Entered: 08/20/2019) |
| 08/26/2019 | 31 | | Stipulated MOTION for Extension of Time to File Response/Reply as to 21 MOTION for Judgment on the Pleadings and Memorandum in Support filed by Defendants Kendall G. Laws, San Juan County. (Attachments: # 1 Text of Proposed Order) Motions referred to Paul Kohler.(Hamilton, R.) (Entered: 08/26/2019) |
| 08/28/2019 | 32 | | ORDER granting 31 Motion for Extension of Time to File Response/Reply re 21 MOTION for Judgment on the Pleadings: Reply memo due by 8/30/2019. Signed by Magistrate Judge Paul Kohler on 8/28/19 (alt) (Entered: 08/28/2019) |
| 08/30/2019 | 33 | | REPLY to Response to Motion re 21 MOTION for Judgment on the Pleadings filed by Defendants Kendall G. Laws, San Juan County. (Hamilton, R.) (Entered: 08/30/2019) |
| 09/27/2019 | 34 | | REPORT OF ATTORNEY PLANNING MEETING. (Attachments: # 1 Text of Proposed Order – Scheduling Order)(Macfarlane, Jacob) (Entered: 09/27/2019) |
| 09/28/2019 | 35 | | NOTICE FROM THE COURT re 21 MOTION for Judgment on the Pleadings, 15 Defendant's MOTION to Dismiss for Failure to State a Claim. Due to a conflict in the calendar, the hearings on these motions will be reset for Wednesday October 30, 2019, at 1:30 pm. (DN) (Entered: 09/28/2019) |
| 09/28/2019 | | | Deadlines/Hearings terminated., Set/Reset Deadlines as to 15 Defendant's MOTION to Dismiss for Failure to State a Claim, 21 MOTION for Judgment on the Pleadings.( Motion Hearing set for 10/30/2019 at 01:30 PM in Room 2B (St George) before Judge David Nuffer.) (DN) (Entered: 09/28/2019) |

| 09/28/2019 | | | **Set/Reset Hearings:** Case Management Conference set for 10/30/2019 at 01:30 PM in Room 2B (St George) before Judge David Nuffer. (DN) (Entered: 09/28/2019) |
|---|---|---|---|
| 10/07/2019 | 36 | | SCHEDULING ORDER: Amended Pleadings due by 12/1/2019. Joinder of Parties due by 12/1/2019. Motions due by 6/1/2020. Final Pretrial Conference set for 3/4/2021 at 08:30 AM in Room 2B (St George) before Judge David Nuffer. 4–5 Day Jury Trial set for 3/15/2021 at 08:15 AM in Room 2B (St George) before Judge David Nuffer. Signed by Magistrate Judge Paul Kohler on 10/5/19 (alt) (Entered: 10/07/2019) |
| 10/21/2019 | 37 | | DOCKET TEXT ORDER re 33 Reply Memorandum in Support of San Juan County Defendants' 21 Motion for Judgment on the Pleadings ("Reply"), filed by San Juan County and Kendall G. Laws ("County Defendants"). By no later than 4:00 P.M. on Monday, October 28, 2019, Plaintiff may file a supplemental opposition memorandum of not more than three pages, addressing (1) the County Defendants' arguments on pages 8 and 9 of their 33 Reply regarding the survival of Plaintiff's request for declaratory relief, if judgment on the pleadings is otherwise granted to the County Defendants on the basis of absolute prosecutorial immunity, and (2) cases indicating that a section 1983 "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). No attached document Signed by Judge David Nuffer on October 21, 2019. (jaw) (Entered: 10/21/2019) |
| 10/23/2019 | 38 | | NOTICE of Appearance by Ryan M. Stephens on behalf of Kendall G. Laws, San Juan County (Stephens, Ryan) (Entered: 10/23/2019) |
| 10/28/2019 | 39 | | MEMORANDUM in Opposition re 21 MOTION for Judgment on the Pleadings filed by Plaintiff Rosalie Chilcoat. (Porter, Karra) (Entered: 10/28/2019) |
| 10/30/2019 | 40 | | Minute Order. Proceedings held before Judge David Nuffer: Counsel present for parties. Arguments heard on the motion to dismiss and motion for judgment on the pleadings. Court made findings on the record. DENYING 15 Motion to Dismiss for Failure to State a Claim ; GRANTING 21 Motion for Judgment on the Pleadings. Mr. Hamilton to draft the order on judgment on pleadings. Ms. Porter to draft the order on motion to dismiss. Deadlines for submissions for exchange of the proposed orders 11/23/2019. Objections/redlines to be completed by 12/2/2019. Scheduling discussed. Location of future hearings discussed. Any discovery/deposition disputes will be before Judge Paul Kohler. Court adjourned. Motion Hearing held on 10/30/2019 re 21 MOTION for Judgment on the Pleadings filed by San Juan County, Kendall G. Laws, 15 Defendant's MOTION to Dismiss for Failure to State a Claim filed by Zane Odell ; Case Management Conference held on 10/30/2019. Written Order to follow oral order: Yes. Attorney for Plaintiff: Karra Porter, Jacob Macfarlane, Attorney for Defendant Hiller, Blake Hamilton. Court Reporter: Kelly Hicken.(Time Start: 1:31, Time End: 3:03, Room SG 2B.) (asb) (Entered: 10/30/2019) |
| 11/12/2019 | 41 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on October 30, 2019 before Judge David Nuffer. Court Reporter/Transcriber Kelly Brown Hicken, RPR, RMR, Telephone number 801–521–7238.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact <u>personal data identifiers</u> from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/3/2019. Redacted Transcript Deadline set for 12/13/2019. Release of Transcript Restriction set for 2/10/2020. (jmr) Modified by removing restricted text on 2/10/2020 (rgj). (Entered: 11/12/2019) |
| 11/13/2019 | 43 | | ANSWER to Complaint with Jury Demand filed by Zane Odell.(Philpot, Jay) Modified on 12/5/2019: document has been filed again as 47 Counterclaim against plaintiff and newly added party who did not file the complaint (alt) (Entered: 11/13/2019) |
| 11/13/2019 | 47 | | COUNTERCLAIM against Rosalie Chilcoat, Mark Franklin filed by Zane Odell (alt) (Entered: 12/05/2019) |
| 12/02/2019 | 44 | | NOTICE of Filing of San Juan County Defendants' Proposed Order and Plaintiff's Redlines/Objections to Defendants' Proposed Order by Kendall G. Laws, San Juan County (Attachments: # 1 Exhibit A– San Juan County Defendants' Proposed Order, # 2 Exhibit B– Plaintiff's Red Line Changes to Proposed Order) (Hamilton, R.) (Entered: 12/02/2019) |
| 12/02/2019 | 45 | | NOTICE OF FILING of Memorandum Decision and Order Denying Defendant Zane Odell's Motion to Dismiss filed by Plaintiff Rosalie Chilcoat. (Macfarlane, Jacob) (Entered: 12/02/2019) |
| 12/04/2019 | 46 | | NOTICE OF FILING of Plaintiff Rose Chilcoat's Answer to Counterclaim re 43 Answer to Complaint *and Counterclaim by Counterclaim Plaintiff, Zane Odell* filed by Plaintiff Rosalie Chilcoat. (Macfarlane, Jacob) (Entered: 12/04/2019) |
| 12/05/2019 | | | Modification of Docket re 43 Answer to Complaint. Error: Filer did not file the Counterclaim, only the Answer to Complaint as counterclaiming against a non–party required having that party added prior to filing. Correction: The Counterclaim has been filed as a separate entry 47 and 43 entry text corrected to reflect that it is only the Answer entry. (alt) (Entered: 12/05/2019) |
| 12/05/2019 | 48 | | ANSWER to 47 Counterclaim filed by Rosalie Chilcoat.(Porter, Karra) (Entered: 12/05/2019) |
| 01/03/2020 | 49 | | NOTICE of Appearance by Kristin A. VanOrman on behalf of Rosalie Chilcoat (VanOrman, Kristin) (Entered: 01/03/2020) |

| 01/03/2020 | 50 | | NOTICE of Appearance by Jessica J. Johnston on behalf of Rosalie Chilcoat (Johnston, Jessica) (Entered: 01/03/2020) |
|---|---|---|---|
| 01/23/2020 | 51 | | Stipulated MOTION for Amended Scheduling Order filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Text of Proposed Order (Proposed) Order Granting Stipulated Motion to Amend Scheduling Order) Motions referred to Paul Kohler.(Porter, Karra) (Entered: 01/23/2020) |
| 01/23/2020 | 52 | | Stipulated MOTION for Leave to File Amended Answer to Counterclaim filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Exhibit Rosalie Chilcoat's Amended Answer to Counterclaim, # 2 Text of Proposed Order (Proposed) Order Granting Stipulated Motion for Leave to Amend Rosalie Chilcoat's Answer to Counterclaim) Motions referred to Paul Kohler.(Porter, Karra) (Entered: 01/23/2020) |
| 02/03/2020 | 53 | | DOCKET TEXT ORDER taking under advisement 51 Motion for Amended Scheduling Order.<br><br>This stipulated motion seeks to move the dispositive motion deadline without moving the trial date. It is the Court's scheduling policy that generally five months must be allowed between the dispositive motion deadline and the trial date to allow the motions to be filed, briefed, set, argued and decided before trial preparation starts. A motion or stipulation that does not leave this amount of time will likely not be granted.<br><br>The parties may file a revised stipulated motion leaving the dispositive motion date as now set or agreeing that the trial date may be changed. If such a motion is not filed within seven days, the motion to amend will be denied.<br><br>Signed by Magistrate Judge Paul Kohler on February 3, 2020. No attached document. (jaw) (Entered: 02/03/2020) |
| 02/03/2020 | 54 | | ORDER granting 51 Stipulated Motion for Amended Scheduling Order: Discovery due by 6/30/2020. Motions due by 8/1/2020. Signed by Magistrate Judge Paul Kohler on 2/3/2020. (jds) (Entered: 02/03/2020) |
| 02/03/2020 | 55 | | ORDER granting 52 Stipulated Motion for Leave to Amend Rosalie Chilcoats Answer to Counterclaim. Signed by Magistrate Judge Paul Kohler on 2/3/2020. (jds) (Entered: 02/03/2020) |
| 02/10/2020 | 56 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Mark Franklin.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (tlh) (Entered: 02/10/2020) |
| 02/18/2020 | 57 | | NOTICE of Appearance by Kristin A. VanOrman on behalf of Mark Franklin (VanOrman, Kristin) (Entered: 02/18/2020) |
| 02/18/2020 | 58 | | NOTICE of Appearance by Jessica J. Johnston on behalf of Mark Franklin (Johnston, Jessica) (Entered: 02/18/2020) |
| 02/19/2020 | 59 | | |

| | | | DEPOSITION of Zane Odell, Zeb Dalton, Torrence Weaver, Sergeant Rob Wilcox, Deputy Jay Begay, Kendall Laws, Phil Lyman, Monte Wells, Rosalie Chilcoat, Mark Franklin taken on 06/15/20, 06/16/20, 06/16/20, 06/17/20, 06/17/20, 06/18/20, 06/18/20, 06/19/20, 06/22/20, 06/23/20 filed by Plaintiff Rosalie Chilcoat.(Lauritzen, John) (Entered: 02/19/2020) |
|---|---|---|---|
| 03/11/2020 | 60 | | ANSWER to 47 Counterclaim filed by Mark Franklin.(VanOrman, Kristin) Modified on 3/23/2020: removed incorrectly added text (alt) (Entered: 03/11/2020) |
| 03/19/2020 | 61 | | SUBSTITUTION OF COUNSEL David S. Bridge replacing Jessica J. Johnston and Kristin A. VanOrman as counsel on behalf of Rosalie Chilcoat, Mark Franklin. (Bridge, David) (Entered: 03/19/2020) |
| 03/30/2020 | 62 | | MEMORANDUM DECISION AND WRITTEN ORDER re 40 Minute Order on 15 Motion to Dismiss for Failure to State a Claim (follows oral order of 10/30/19). Signed by Judge David Nuffer on 3/27/20 (alt) (Entered: 03/30/2020) |
| 03/30/2020 | 63 | | MEMORANDUM DECISION AND WRITTEN ORDER re 40 Minute Order on 21 Motion for Judgment on the Pleadings (follows oral order of 10/30/19). Signed by Judge David Nuffer on 3/27/20 (alt) (Entered: 03/30/2020) |
| 07/27/2020 | 64 | | Stipulated MOTION for Amended Scheduling Order filed by Defendant Zane Odell. (Attachments: # 1 Text of Proposed Order) Motions referred to Paul Kohler.(Hiller, Lorne) Modified on 7/28/2020: corrected motion relief and removed unnecessary text (alt) (Entered: 07/27/2020) |
| 07/28/2020 | | | Modification of Docket re 64 MOTION for Amended Scheduling Order. Error: filer selected wrong motion relief, "Scheduling Order". Correction: Motion relief corrected to "Amended Scheduling Order" and incorrectly added entry text removed. (alt) (Entered: 07/28/2020) |
| 07/28/2020 | 65 | | ORDER granting 64 Motion for Amended Scheduling Order: Discovery due by 9/28/2020. Motions due by 10/15/2020. Signed by Magistrate Judge Paul Kohler on 7/28/20 (alt) (Entered: 07/28/2020) |
| 10/13/2020 | 66 | | Stipulated MOTION for Amended Scheduling Order filed by Defendant Zane Odell. (Attachments: # 1 Text of Proposed Order) Motions referred to Paul Kohler.(Hiller, Lorne) (Entered: 10/13/2020) |
| 10/15/2020 | 67 | | MOTION for Summary Judgment filed by Counter Defendants Rosalie Chilcoat, Mark Franklin. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G)(Bridge, David) (Entered: 10/15/2020) |
| 10/16/2020 | 68 | | ORDER granting 66 Motion to Amend Scheduling Order: Motions due by 10/23/2020. Signed by Magistrate Judge Paul Kohler on 10/15/20 (alt) (Entered: 10/16/2020) |
| 10/16/2020 | 69 | | MOTION for Summary Judgment and Memorandum in Support filed by Defendant Zane Odell. (Attachments: # 1 Appendix Appendix to Motion for Summary Judgment, # 2 Exhibit A−Deposition Transcript of Mark Franklin, # 3 Exhibit B−Deposition Transcript of Zane Odell, # 4 Exhibit C−San Juan County Sheriffs Office Deputy Report, # 5 Exhibit D−Transcript of Deposition |

| | | | |
|---|---|---|---|
| | | | of Robert Wilcox, # 6 Exhibit E–Official Transcript of December 3 2018 Oral Arguments, # 7 Exhibit F–Zane Odell Voluntary Statement Form, # 8 Exhibit G–Transcript of Deposition of Zebediah Dalton, # 9 Exhibit H–Transcript of Rosalie Chilcoat, # 10 Exhibit I–Roses Narrative–Incident on Lime Ridge, # 11 Exhibit K–Affidavit of Zane Odell, # 12 Exhibit M–Transcript of Deposition of Jay Begay, # 13 Exhibit N–Official Transcript of November 2 2017 Preliminary Hearing, # 14 Exhibit O–Transcript of Deposition of Kendall Laws)(Hiller, Lorne) (Entered: 10/16/2020) |
| 10/23/2020 | 70 | | MOTION to Amend/Correct 2 Complaint, and Memorandum in Support filed by Plaintiff Rosalie Chilcoat. Motions referred to Paul Kohler.(Porter, Karra) (Entered: 10/23/2020) |
| 10/23/2020 | 71 | | EXHIBITS filed by Rosalie Chilcoat re 70 MOTION to Amend/Correct 2 Complaint, and Memorandum in Support . (Attachments: # 1 Exhibit A – Amended Complaint, # 2 Exhibit B – P Lyman Deposition Excerpts, # 3 Exhibit C – San Juan County Meeting Minutes for 04/04/17, # 4 Exhibit D – San Juan County Meeting Minutes for 04/18/17, # 5 Exhibit E – Robert Wilcox Testimony Excerpts)(Porter, Karra) (Entered: 10/23/2020) |
| 10/26/2020 | 72 | | NOTICE of Corrected Exhibit A to Plaintiff's Motion to Amend Complaint by Rosalie Chilcoat re 71 Exhibits, (Attachments: # 1 Exhibit A – Amended Complaint with redlines, # 2 Exhibit A – Amended Complaint final) (Porter, Karra) (Entered: 10/26/2020) |
| 11/06/2020 | 73 | | Defendant's RESPONSE to Motion re 70 MOTION to Amend/Correct 2 Complaint, and Memorandum in Support filed by Defendant Zane Odell. (Hiller, Lorne) (Entered: 11/06/2020) |
| 11/06/2020 | 74 | | MOTION for Extension of Time to File Response/Reply as to 69 MOTION for Summary Judgment and Memorandum in Support and Memorandum in Support filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Text of Proposed Order) Motions referred to Paul Kohler.(Porter, Karra) (Entered: 11/06/2020) |
| 11/06/2020 | 75 | | MEMORANDUM in Opposition re 70 MOTION to Amend/Correct 2 Complaint, and Memorandum in Support filed by Defendants Kendall G. Laws, San Juan County. (Attachments: # 1 Exhibit 1– Lyman Deposition Transcript, # 2 Exhibit 2– Laws Deposition Transcript, # 3 Exhibit 3– Emails re Phil Lyman deposition, # 4 Exhibit 4– Meeting Minutes)(Hamilton, R.) (Entered: 11/06/2020) |
| 11/09/2020 | 76 | | ORDER granting 74 Motion for Extension of Time to File Response/Reply re 69 MOTION for Summary Judgment: Response due by 11/17/2020. Signed by Magistrate Judge Paul Kohler on 11/9/20 (alt) (Entered: 11/09/2020) |
| 11/11/2020 | 77 | | MOTION for Extension of Time to File Response/Reply as to 67 MOTION for Summary Judgment and Memorandum in Support filed by Counter Claimant Zane Odell. (Attachments: # 1 Text of Proposed Order) Motions referred to Paul Kohler.(Philpot, Jay) (Entered: 11/11/2020) |
| 11/12/2020 | 78 | | ORDER granting 77 Motion for Extension of Time to File Response/Reply re 67 MOTION for Summary Judgment: Response due by 11/30/2020. Signed by Magistrate Judge Paul Kohler on 11/12/20 (alt) (Entered: 11/12/2020) |

| 11/17/2020 | 79 | | MOTION for Leave to File Excess Pages and Memorandum in Support filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Text of Proposed Order) Motions referred to Paul Kohler.(Porter, Karra) (Entered: 11/17/2020) |
| --- | --- | --- | --- |
| 11/17/2020 | 80 | | Amended MOTION for Leave to File Excess Pages and Memorandum in Support filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Text of Proposed Order) (Entered: 11/17/2020) |
| 11/17/2020 | 81 | | MEMORANDUM in Opposition re 69 MOTION for Summary Judgment filed by Plaintiff Rosalie Chilcoat. (Porter, Karra) (Entered: 11/17/2020) |
| 11/17/2020 | 82 | | APPENDIX to 81 Memorandum in Opposition to Motion filed by Plaintiff Rosalie Chilcoat . (Attachments: # 1 Exhibit A – Deposition of Rosalie Chilcoat, # 2 Exhibit B – Deposition of Deputy Jay Begay, # 3 Exhibit C – Slipsheet for Audio of Zane Odell 911 call, 4/1/17, # 4 Exhibit D – Deposition of Zane Odell, # 5 Exhibit E – Deposition of Mark Franklin, # 6 Exhibit F – Deposition of Robert Wilcox, # 7 Exhibit G – Transcript of preliminary hearing in State of Utah v. Rosalie Chilcoat, 11/2/17, # 8 Exhibit H – Information, 4/11/17; and Amended Information, 4/18/17; in State of Utah v. Rosalie Chilcoat, # 9 Exhibit I – San Juan County Sheriffs Office incident report, # 10 Exhibit J – Transcript of oral arguments in State of Utah v. Mark Franklin, 12/3/18, # 11 Exhibit K – Deposition of Zebediah Dalton, # 12 Exhibit L – Slipsheet for Audio of Zane Odell 911 call, 4/3/17, # 13 Exhibit M – Slipsheet for Audio of San Juan County Dispatch call to Deputy Begay, # 14 Exhibit N – Slipsheet for Bodycam video of Deputy Begay, # 15 Exhibit O – Deposition of Kendall Laws, # 16 Exhibit P – Deposition of Phillip Lyman, # 17 Exhibit Q – Facebook posts and comments, # 18 Exhibit R – Email from Rosalie Chilcoat to Donald Hoffheins of the BLM, # 19 Exhibit S – Slipsheet for Audio of voice message left by Mark Franklin for Robert Wilcox, 4/7/17, # 20 Exhibit T – (States) Response in Opposition to Defendants Motion to Quash Bindover in State of Utah v. Mark Franklin, Rosalie Jean Chilcoat, # 21 Exhibit U – Notice of Expert Testimony by BLM and/or SITLA Experts in State of Utah v. Rosalie Jean Chilcoat, # 22 Exhibit V – Ruling on Motion to Quash Bindover in State of Utah v. Mark Kevin Franklin and Rosalie Jean Chilcoat, # 23 Exhibit W – (Second) Amended Information in State of Utah v. Rosalie Jean Chilcoat, 5/1/18, # 24 Exhibit X – Order Denying Motion for Stay, 5/9/18; and Order Denying Motion for Stay of Proceedings Pending Disposition of Petition, 5/14/18; in State of Utah v. Mark Kevin Franklin and Rosalie Jean Chilcoat, # 25 Exhibit Y – Order (Granting Motion to Stay) in State of Utah v. Mark Kevin Franklin and Rosalie Jean Chilcoat, # 26 Exhibit Z – Order and Sua Sponte Motion for Summary Disposition in Rosalie Jean Chilcoat and Mark Kevin Franklin v. State of Utah, # 27 Exhibit AA – Order of Summary Reversal in Rosalie Jean Chilcoat and Mark Kevin Franklin v. State of Utah, # 28 Exhibit BB – Minutes Pretrial Conference/Order of Dismissal in State of Utah v. Rosalie Jean Chilcoat)(Porter, Karra) (Entered: 11/17/2020) |
| 11/18/2020 | 83 | | Defendant's RESPONSE to Motion re 80 Amended MOTION for Leave to File Excess Pages and Memorandum in Support filed by Defendant Zane Odell. (Hiller, Lorne) (Entered: 11/18/2020) |
| 11/18/2020 | 84 | | NOTICE of Change of Address by R. Blake Hamilton (Hamilton, R.) (Entered: 11/18/2020) |

| 11/18/2020 | 85 | | REPLY to Response to Motion re 80 Amended MOTION for Leave to File Excess Pages and Memorandum in Support filed by Plaintiff Rosalie Chilcoat. (Porter, Karra) (Entered: 11/18/2020) |
|---|---|---|---|
| 11/18/2020 | 86 | | ERRATA to 82 Appendix,,,,,,,,,,, filed by Plaintiff Rosalie Chilcoat . (Attachments: # 1 Exhibit to DKT 82–4)(Porter, Karra) (Entered: 11/18/2020) |
| 11/19/2020 | 87 | | <span style="color:red">ORDER granting 80 Motion for Leave to File Excess Pages/overlength memo. Signed by Magistrate Judge Paul Kohler on 11/19/20 (alt)</span> (Entered: 11/19/2020) |
| 11/19/2020 | 88 | | NOTICE OF CONVENTIONAL FILING of Certain Exhibits For The Appendix (Dkt No. 82) filed by Plaintiff Rosalie Chilcoat re 82 Appendix,,,,,,,,,,, (Porter, Karra) (Entered: 11/19/2020) |
| 11/20/2020 | 89 | | EXHIBITS C, L, M, N, and S re 82 Appendix to 81 Memorandum in Opposition to 69 MOTION for Summary Judgment consisting of audio and video files submitted on a single USB Flash Drive, filed by Rosalie Chilcoat (The exhibits were not uploaded to the docket due to non–PDF file types and will be retained in a case file folder in the Clerk's Office while the case is active, and according to the retention schedule set forth by the Judicial Conference thereafter.) (alt) (Entered: 11/20/2020) |
| 11/20/2020 | 90 | | REPLY to Response to Motion re 70 MOTION to Amend/Correct 2 Complaint, and Memorandum in Support filed by Plaintiff Rosalie Chilcoat. (Attachments: # 1 Exhibit A – Deposition of Phil Lyman, # 2 Exhibit B – Deposition of Kendall Laws)(Porter, Karra) (Entered: 11/20/2020) |
| 11/25/2020 | 91 | | REQUEST to Submit for Decision re 70 MOTION to Amend/Correct 2 Complaint, and Memorandum in Support filed by Defendant San Juan County. (Hamilton, R.) (Entered: 11/25/2020) |
| 11/30/2020 | 92 | | MEMORANDUM in Opposition re 67 MOTION for Summary Judgment filed by Counter Claimant Zane Odell. (Attachments: # 1 Exhibit CC Plaintiff's Attach A)(Philpot, Jay) (Entered: 11/30/2020) |
| 12/02/2020 | 93 | | Defendant's REPLY to Response to Motion re 69 MOTION for Summary Judgment filed by Defendant Zane Odell. (Hiller, Lorne) (Entered: 12/02/2020) |
| 12/02/2020 | 94 | | REQUEST to Submit for Decision re 81 Memorandum in Opposition to Motion, 69 MOTION for Summary Judgment, 93 Reply Memorandum/Reply to Response to Motion filed by Defendant Zane Odell. (Hiller, Lorne) (Entered: 12/02/2020) |
| 12/14/2020 | 95 | | REPLY to Response to Motion re 67 MOTION for Summary Judgment filed by Counter Defendants Rosalie Chilcoat, Mark Franklin. (Bridge, David) (Entered: 12/14/2020) |
| 12/22/2020 | 96 | | Motions No Longer Referred: 70 MOTION to Amend/Correct 2 Complaint, and Memorandum in Support (jrl) (Entered: 12/22/2020) |
| 12/28/2020 | 97 | | REQUEST to Submit for Decision re 67 MOTION for Summary Judgment filed by Counter Defendants Rosalie Chilcoat, Mark Franklin. (Bridge, David) (Entered: 12/28/2020) |

| 01/04/2021 | 98 | | **DOCKET TEXT ORDER VACATING Jury Trial** set for 03/15/2021 at 08:15 AM and related trial deadlines. The trial date, final pretrial conference, and trial preparation deadlines set within the 36 Scheduling Order are VACATED. The trial and related trial deadlines will be reset, if necessary, after rulings are entered on the pending motions (docket nos. 67 , 69 , and 70 ) for a time when the court is open for civil trial. So ordered by Judge David Nuffer on 1/4/21 (alt) (Entered: 01/04/2021) |
| --- | --- | --- | --- |
| 01/21/2021 | 99 | | MEMORANDUM DECISION AND ORDER denying 70 Motion to Amend/Correct Complaint. Signed by Judge David Nuffer on 1/21/21 (alt) (Entered: 01/21/2021) |
| 02/05/2021 | 100 | | MEMORANDUM DECISION AND ORDER granting 69 Motion for Summary Judgment: Chilcoat's claims against Odell are dismissed with prejudice. Signed by Judge David Nuffer on 2/4/21 (alt) (Entered: 02/05/2021) |
| 02/19/2021 | 101 | | Defendant's MOTION for Attorney Fees filed by Defendant Zane Odell. (Attachments: # 1 Exhibit A Plaintiffs 3rd Suppl Rule 26, # 2 Exhibit B Discovery Requests, # 3 Exhibit C Order Motion to Suppress, # 4 Exhibit D San Juan County Subpoena, # 5 Exhibit E Counterclaim Defendants Supplemental Disclosures 1st, # 6 Exhibit F November 2 Transcript of Prelim Hearing, # 7 Exhibit G December 3 Hearing Transcript, # 8 Exhibit H Motion to Quash, # 9 Exhibit I Time Keeper Summary, # 10 Exhibit J Affidavit of Benjamin Wegener, # 11 Exhibit K Affidavit of Bruce Jenkins, # 12 Text of Proposed Order Motion Attorneys Fees Proposed Order) Motions referred to Paul Kohler.(Hiller, Lorne) (Entered: 02/19/2021) |
| 02/19/2021 | 102 | | Defendant's MOTION for Leave to File Excess Pages filed by Defendant Zane Odell. (Attachments: # 1 Text of Proposed Order Motion for Leave to File an Overlength Motion for Attorneys Fees) Motions referred to Paul Kohler.(Hiller, Lorne) (Entered: 02/19/2021) |
| 02/20/2021 | 103 | | DOCKET TEXT ORDER granting 102 Motion for Leave to File Excess Pages Signed by Magistrate Judge Paul Kohler on 2/20/21. No attached document. (DN) (Entered: 02/20/2021) |
| 02/23/2021 | 104 | | MEMORANDUM DECISION AND ORDER granting 67 Motion for Summary Judgment: counterclaims are dismissed with prejudice. Signed by Judge David Nuffer on 2/23/21 (alt) (Entered: 02/23/2021) |
| 02/23/2021 | 105 | | MEMORANDUM DECISION AND ORDER denying 101 Motion for Attorney Fees. Signed by Judge David Nuffer on 2/23/21 (alt) (Entered: 02/23/2021) |
| 02/24/2021 | 106 | | JUDGMENT is entered in favor of Zane Odell on Plaintiff's causes of action and in favor of Rosalie Chilcoat and Mark Franklin on Mr. Odell's counterclaims. The action is dismissed with prejudice – CASE CLOSED. Magistrate Judge Paul Kohler no longer assigned to case. Signed by Judge David Nuffer on 2/24/21 (alt) (Entered: 02/24/2021) |
| 03/09/2021 | 107 | | RE–FILED CORRECTLY AS 108 BILL OF COSTS – ~~NOTICE OF FILING of San Juan County Defendants' Bill of Costs filed by Defendants Kendall G. Laws, San Juan County. (Attachments: # 1 Exhibit A - Bill of Costs, # 2 Exhibit B - Invoices)(Hamilton, R.)~~ Modified on 3/12/2021: added re–filing |

| | | | |
|---|---|---|---|
| | | | info (alt) (Entered: 03/09/2021) |
| 03/12/2021 | 108 | | BILL OF COSTS filed by Kendall G. Laws, San Juan County. (Attachments: # 1 Exhibit A– Bill of Costs, # 2 Exhibit B–Invoices)(Hamilton, R.) (Entered: 03/12/2021) |
| 03/12/2021 | | | Modification of Docket re 107 Notice of Filing. Error: Filers were unable to e–file their Bill of Cost correctly as such because they had been terminated in the case when all claims against them were dismissed. Correction: Filers contacted the court and have been unterminated as parties in the case – they have re–filed their BoC paperwork correctly as 108 Bill of Costs. (alt) (Entered: 03/12/2021) |
| 03/23/2021 | 109 | | OBJECTIONS to 108 Bill of Costs filed by Rosalie Chilcoat. (Porter, Karra) (Entered: 03/23/2021) |
| 03/25/2021 | 110 | | NOTICE OF APPEAL as to 106 Judgment, filed by Rosalie Chilcoat. Appeals to the USCA for the 10th Circuit. Filing fee $ 505, receipt number AUTDC–3961800. (Porter, Karra) (Entered: 03/25/2021) |
| 03/25/2021 | 111 | | Transmission of Preliminary Record to USCA re 110 Notice of Appeal (Attachments: # 1 Appendix) (alt) (Entered: 03/25/2021) |
| 03/26/2021 | 112 | | NOTICE OF DEFICIENCY re 110 Notice of Appeal. The document was not properly linked to all orders it is appealing and the document cites a docket entry ( 70 ) that is not an order. An amended preliminary record will issue. (alt) (Entered: 03/26/2021) |

Karra J. Porter, #5223
Anna P. Christiansen, #17518
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 81111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
karra.porter@chrisjen.com
anna.christiansen@chrisjen.com

Patrick A. Shea, #2929
PATRICK A. SHEA, P.C.
252 South 1300 East, Suite A
Salt Lake City, Utah 84102
Telephone: (801) 582-0949
Facsimile: (801) 582-0834
pas@patshealaw.com

*Attorneys for Plaintiff Rosalie Chilcoat*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| ROSALIE CHILCOAT, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>SAN JUAN COUNTY, a political subdivision of the state of Utah; KENDALL G. LAWS, and ZANE ODELL,<br><br>*Defendants*. | **NOTICE OF APPEAL**<br><br>Civil No. 4:19-cv-00027-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Notice is hereby given that Plaintiff Rosalie Chilcoat, by and through counsel, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment entered on February 24, 2021, and all preceding, subsidiary, and related rulings, including the Memorandum Decision and Order Granting San Juan County Defendants' Motion for Judgment on the Pleadings dated March 30, 2020 [DE-70] and the Memorandum Decision and Order Denying Plaintiff's Motion to Amend dated January 21, 2021 [DE-99]. This appeal is taken solely as to defendants San Juan County and Kendall G. Laws. No appeal is taken as to defendant Zane Odell.

DATED this 25th day of March, 2021.

CHRISTENSEN & JENSEN, P.C.

*/s/ Karra J. Porter*
Karra J. Porter
Anna P. Christiansen

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of March, 2021, a true and correct copy of the foregoing

**NOTICE OF APPEAL** was served via electronic mail upon the following:

Lorne G. Hiller
WEGENER SCARBOROUGH YOUNGE & HOCKENSMITH, LLP
743 Horizon Court, Suite 200
Grand Junction, CO 81506
lorne@wegscar.com

J. Morgan Philpot
JM PHILPOT LAW, PLLC
620 East 100 North
Alpine, UT 84004
morgan@jmphilpot.com

*Attorneys for Defendant Zane Odell*

David S. Bridge
SCALLEY READING BATES HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, UT 84101
dbridge@scalleyreading.net
*Attorneys for Counterclaim Defendants Rosalie Chilcoat and Mark Franklin*

R. Blake Hamilton
Ashley M. Gregson
Ryan M. Stephens
DENTONS DURHAM JONES PINEGAR, P.C.
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
blake.hamilton@dentons.com
ashley.gregson@dentons.com
ryan.stephens@dentons.com
*Attorneys for San Juan County and Kendall G. Laws*

*/s/ Natalie Jackson*
Natalie Jackson, Secretary

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSALIE CHILCOAT,<br><br>        Plaintiff,<br><br>v.<br><br>SAN JUAN COUNTY, KENDALL G. LAWS,<br>and ZANE ODELL,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING SAN JUAN COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><br>Civil No.: 4:19-cv-00027-DN-PK<br><br>District Judge David Nuffer |

Before the court is Defendants San Juan County and Kendall G. Laws' (collectively "San Juan County Defendants") Motion for Judgment on the Pleadings ("Motion")[1] requesting that the Court dismiss Plaintiff Rosalie Chilcoat's claims against them. The Motion is based on absolute prosecutorial immunity, Eleventh Amendment sovereign immunity, and for failure to state a claim for municipal liability. It is important that this order does not determine whether the facts alleged in the Complaint are true or false. As is later explained, the decisive issues are well established legal principles protecting public officials, even if wrongful actions were taken. Based on these legal principles and for other reasons discussed below, the Motion is GRANTED. The claims against the San Juan County Defendants are DISMISSED.

---

[1] Docket no. 21, filed July 10, 2019; Memorandum in Opposition to San Juan County Defendants' Motion for Judgment on the Pleadings, docket no. 29, filed August 14, 2019; Reply Memorandum in Support of San Juan County Defendants' Motion for Judgment on the Pleadings, docket no. 33, filed August 30, 2019; Supplemental Memorandum in Opposition to San Juan County Defendants' Motion for Judgment on the Pleadings, docket no. 39, filed October 28, 2019. Oral argument was heard on October 30, 2019.

BACKGROUND .................................................................................................................... 2

STANDARD OF REVIEW – MOTION FOR JUDGMENT ON THE PLEADINGS .................. 4

DISCUSSION ....................................................................................................................... 5

    Third Cause of Action - 42 U.S.C. § 1983 (Against Defendant Laws) ...................................... 5

        I.    Absolute Prosecutorial Immunity .................................................................... 5

        II.    Eleventh Amendment Sovereign Immunity .................................................... 6

        III.    Prospective Injunctive and Declaratory Relief ................................................ 7

    Fourth Cause of Action - 42 U.S.C. § 1983 (Against Defendant San Juan County) ................. 9

ORDER ............................................................................................................................. 10

# BACKGROUND[2]

The San Juan County Sheriff's Office began investigating a suspected trespassing incident on April 1, 2017.[3] Two days later, a few witnesses who thought Rosalie Chilcoat's vehicle matched the description of the suspected trespasser, confronted Chilcoat about the incident.[4] After the confrontation, Chilcoat sent a letter to the Federal Bureau of Land Management ("BLM") that accused the witnesses of accosting and assaulting her.[5]

On April 11, 2017, Defendant Laws, the San Juan County Attorney, filed an information against Chilcoat charging her for two misdemeanor counts: (1) Trespassing on Trust Lands and (2) False Personal Identity to a Peace Officer.[6] A few days later, Laws filed an Amended Information charging Chilcoat with two additional felonies: (1) Attempted Wanton Destruction of Livestock and (2) Retaliation Against a Case Witness, Victim, or Informant.[7] The witness

---

[2] The facts set forth below are drawn from the allegations of the Complaint, which are accepted as true for purposes of deciding the Motion.

[3] Complaint and Jury Demand ("Complaint") ¶¶ 11-13, docket no. 2, filed April 10, 2019.

[4] *Id.* ¶ 15.

[5] *Id.* ¶ 22.

[6] *Id.* ¶ 27.

[7] *Id.* ¶ 28.

2

retaliation charge was based on Chilcoat's complaint to the BLM about her interaction with the witnesses.[8]

During the preliminary hearing on November 2, 2017, the court limited evidence the prosecution could use for the witness retaliation charge. Laws was instructed that he could only use evidence showing that Chilcoat sent the BLM complaint in bad faith.[9] The language about being assaulted could not be the basis for the charge.[10] In response to the court's limiting instruction, Laws stated that he could present pictures that Chilcoat submitted to the BLM with her letter that were "embellished or changed, [or] altered[.]"[11] As a result, the court ended up binding over Chilcoat on the retaliation charge.[12] Six months later Laws dropped the charge.[13]

Chilcoat filed a complaint alleging Section 1983 claims against Laws and San Juan County. Chilcoat asserted that her constitutional rights were violated by the statement Laws made during the preliminary hearing about the evidence for the retaliation charge, which was "utterly false," and "wholly of his own fabrication."[14] Chilcoat also alleged that since Laws is a final decision-maker for the County, the County should be liable under Section 1983 for Laws' statement.[15]

---

[8] *Id.* ¶ 29.
[9] Transcript of Preliminary Hearing at 85, Exhibit A to Motion, docket no. 21-1, filed July 10, 2019.
[10] *Id.* at 81.
[11] *Id.* at 82.
[12] Complaint, *supra* note 2, ¶ 32.
[13] *Id.* ¶ 35.
[14] *Id.* ¶ 31.
[15] *Id.* ¶ 73.

3

## STANDARD OF REVIEW – MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) specifically provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[16] A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss.[17] In order to withstand a motion to dismiss under *Bell Atlantic Corp. v. Twombly*,[18] and *Ashcroft v. Iqbal*,[19] a plaintiff must allege enough facts, "taken as true, to state a claim to relief that is plausible on its face."[20] A plaintiff must "offer specific factual allegations to support each claim."[21] While the Court must "accept as true all of the allegations contained in a complaint," this requirement is "inapplicable to legal conclusions."[22] The determination of plausibility will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[23] Therefore, "in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[24]

---

[16] Fed. R. Civ. P. 12(c).

[17] *Leiser v. Moore*, 903 F.3d 1137, 1139 (10th Cir. 2018) (citation omitted).

[18] 550 U.S. 544 (2007).

[19] 556 U.S. 662 (2009).

[20] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

[21] *Id.*

[22] *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[23] *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

[24] *Id.* The Court may also consider "matters of public record," Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) (December 2019 update) (citations omitted), as well as documents that are "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation omitted). The claims against the County Defendants arise out of statements made by Laws during a preliminary hearing for the state criminal case. The transcript is a matter of public record and is quoted by Plaintiff in her Complaint. Therefore, the court has taken judicial notice of the transcript of the preliminary hearing in deciding this motion.

4

## DISCUSSION

**Third Cause of Action - <mark>42 U.S.C. § 1983</mark> (Against Defendant Laws)**

Chilcoat's sole cause of action against Laws is for a violation of her constitutional rights under <mark>42 U.S.C. § 1983</mark>.[25] Chilcoat alleges that Laws violated her First, Fourth, and Fourteenth Amendment rights. But regardless of the specific constitutional provisions listed in the Complaint, Chilcoat's Section 1983 claim against Laws is barred by both absolute prosecutorial immunity and Eleventh Amendment sovereign immunity.

### I.     Absolute Prosecutorial Immunity

Chilcoat's Section 1983 claim for damages against Laws in his individual capacity is barred by prosecutorial immunity. The Supreme Court has adopted a "functional approach" to determine whether a prosecutor is entitled to absolute immunity.[26] When a prosecutor is acting as an advocate for the State, the prosecutor is entitled to absolute immunity.[27]

Chilcoat argues that, in allegedly giving false information to the judge at the preliminary hearing, Laws was acting as "a complaining witness" rather than as an advocate,[28] and thus has no claim to immunity for conduct undertaken in that role.[29] However, the transcript of the preliminary hearing demonstrates that Laws was not under oath and did not provide any testimony.[30]

> *The sworn/unsworn distinction is more than critical; it is determinative.* In *Kalina*, a prosecutor filed three documents with the court: (1) an information

---

[25] Complaint, *supra* note 2, ¶ 66.
[26] *Mink v. Suthers*, 482 F.3d 1244, 1259 (10th Cir. 2007) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).
[27] *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993).
[28] Complaint, *supra* note 2, ¶¶ 30-31, 69.
[29] *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997) (prosecutor acted as "complaining witness rather than a lawyer" in certifying document "[u]nder penalty of perjury" and was therefore not entitled to absolute immunity for such act).
[30] Transcript of Preliminary Hearing, *supra* note 8.

5

charging the defendant in that case with burglary; (2) a motion for an arrest warrant; and (3) a sworn certification of probable cause, which contained two inaccurate factual statements. 522 U.S. at 121, 118 S.Ct. at 505. The Supreme Court held that the prosecutor acted as an advocate except for his swearing to the truth of the certification. *Id.* at 129, 118 S.Ct. at 509. In that regard alone, the Court held that the prosecutor functioned as a complaining witness, which meant that he was not protected by absolute immunity so far as the contents of the certification were concerned. *See id.* at 130, 118 S.Ct. at 510 ("Testifying about facts is the function of the witness, not of the lawyer.").[31]

Because Laws was not testifying at the preliminary hearing, he was not acting as a witness. Rather, his statements were made in his role as an advocate in court and were therefore "activities intimately associated with the judicial phase of the criminal process."[32] He is therefore absolutely immune from personal liability for them. Accordingly, the third cause of action is DISMISSED as to Chilcoat's claim for damages.

## II.      Eleventh Amendment Sovereign Immunity

To the extent Chilcoat's third cause of action is brought against Laws in his official capacity, he is entitled to sovereign immunity under the Eleventh Amendment. The Eleventh Amendment immunizes states from suit in federal court.[33] This includes employees that act on behalf of the state, or other public officials sued in their official capacity for money damages or declaratory relief for past actions.[34] Under Utah law an attorney who serves as a public

---

[31] *Rivera v. Leal*, 359 F.3d 1350, 1355 (11th Cir. 2004) (where, among other things, prosecutor "never personally swore to the truth of any information he shared with the court," "he did not function as a complaining witness"); *Adams v. Hanson*, 656 F.3d 397, 409 (6th Cir. 2011) ("Hanson's [allegedly false] unsworn statements during a pretrial court appearance[] by the prosecutor in support of taking criminal action against a suspect, are acts of advocacy protected by absolute immunity.") (citations and quotation marks omitted); *Hendrickson v. Cervone*, 661 F. App'x 961, 967 (11th Cir. 2016) (unpublished) (reaffirming sworn-unsworn distinction and holding prosecutor who, among other things, allegedly falsely certified to having sworn testimony to support charges, but who was not alleged to have "personally swor[n] to the truth of the facts in the information," was entitled to absolute immunity for alleged conduct).

[32] *Mink*, 482 F.3d at 1259 (citation and internal quotation marks omitted).

[33] *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

[34] *See Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985) (a suit against an individual acting in an official capacity is properly treated as a suit against the state itself and is barred under the Eleventh Amendment); *V-1 Oil Co. v. Utah*

prosecutor "conduct[s], *on behalf of the state*, all prosecutions for a public offense committed within a county or prosecution district."[35] Since Laws was acting on behalf of the state during the preliminary hearing, "Eleventh Amendment immunity . . . shield[s] [Laws] from liability in his official capacity."[36]

### III. Prospective Injunctive and Declaratory Relief

An "action for injunctive relief no matter how it is phrased is against a defendant in official capacity only[.]"[37] Eleventh Amendment immunity to an injunction claim may be avoided, under certain circumstances, by the *Ex parte Young*[38] doctrine. This doctrine allows a plaintiff to sue the state for prospective relief if the plaintiff alleges "an ongoing violation of federal law[.]"[39] That circumstance is not present here, so the third cause of action is likewise DISMISSED as to the request for injunctive relief.

Chilcoat alleges that Laws' knowing or reckless misrepresentations leading to her bindover were made "in retaliation for [her] political and environmental views and/or public advocacy in relation to the criminal prosecution of Laws' friend [Phillip] Lyman."[40] In a supplemental memorandum, she adds that this retaliation has resulted in the chilling of her First

---

*State Dep't of Pub. Safety*, 131 F.3d 1415, 1422 (10th Cir. 1997) ("Eleventh Amendment 'does not permit judgments against state officers declaring they violated federal law in the past'") (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)); *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (Eleventh Amendment sovereign immunity barred § 1983 claims for damages and declaratory judgment against prison officials in their official capacities).

[35] Utah Code Ann. § 17-18a-401(1) (emphasis added).

[36] *Nielander v. Board of County Commissioners of County of Republic, Kansas*, 582 F.3d 1155, 1164 (10th Cir. 2009).

[37] *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 844 F.2d 714, 718 (10th Cir. 1988) (citation omitted).

[38] 209 U.S. 123 (1908).

[39] *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

[40] *Id.* ¶ 67

7

Amendment rights due to "the threat of future retaliation," and that this constitutes "an ongoing/prospective injury."[41]

Chilcoat's Complaint makes no mention of any concern regarding future retaliation. Rather, it focuses on Laws' past actions, asserting that they "*were* in violation of Ms. Chilcoat's rights."[42] She seeks "[a] declaration that the defendants' actions *violated* Plaintiff's constitutional rights" and vaguely requests "[i]njunctive relief as determined by the Court."[43] The requests for declaratory and injunctive relief are not tethered to *any* alleged continuing violation or threatened harm. That being the case, the *Ex parte Young* doctrine cannot penetrate Laws' sovereign immunity shield.[44]

To the extent the claim for declaratory relief is asserted against Laws in his individual capacity, it nevertheless fails for the same reason. A request for declaratory relief that will not "affect[] the behavior of the defendant toward the plaintiff" merely seeks an advisory opinion.[45] Chilcoat's claims for damages based on Laws' alleged conduct fail (as against Laws due to prosecutorial immunity, and as against the County as explained below), and her claim for injunctive relief is barred by sovereign immunity. As a result, her claim for declaratory relief seeks nothing more than "the satisfaction of a declaration that [Chilcoat] was wronged."[46] On that ground, it is DISMISSED as well.

---

[41] Supplement, *supra* note 1, at 3.
[42] Complaint, *supra* note 2, ¶ 68 (emphasis added).
[43] Complaint, *supra* note 2, at 19.
[44] *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019) (recognizing that *Ex parte Young* doctrine does not allow plaintiff to "obtain a declaration that a state officer has violated a plaintiff's federal rights in the past") (citation and quotation marks omitted).
[45] *Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (citations and quotation marks omitted).
[46] *Id.* at 1299 (citation omitted).

8

**Fourth Cause of Action - <mark>42 U.S.C. § 1983</mark> (Against Defendant San Juan County)**

Chilcoat also alleges that San Juan County is liable for the actions of Laws during the preliminary hearing. To hold a municipality liable under Section 1983, a plaintiff must demonstrate, among other things, that there is an "official municipal policy" that caused a constitutional violation.[47]

In this case, even if there were a constitutional violation by Laws, there is no plausible allegation of the existence of an official policy or custom by the County that caused the alleged constitutional violation. As explained above, Laws was acting on behalf of the State when prosecuting Chilcoat, not the County. Therefore, his actions cannot be considered the "policy" of the County.[48] And a single allegation that Laws misstated facts in a preliminary hearing does not constitute an official policy or custom of the County. Therefore, Chilcoat has failed to sufficiently allege that the County is liable under *Monell*. The fourth cause of action is DISMISSED.

---

[47] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[48] <mark>*Nielander v. Board of County Commissioners of County of Republic, Kansas*, 582 F.3d 1155, 1170 (10th Cir. 2009)</mark> (affirming summary judgment for municipality on claims brought against it based on alleged conduct of county attorney, who was state official and therefore "not a *municipal* policymaker") (emphasis in original).

9

# ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings[49] is GRANTED. Plaintiff's claims against Laws and San Juan County are DISMISSED in their entirety.

SIGNED March 27, 2020.  BY THE COURT:

_____
David Nuffer
United States District Judge

---

[49] Docket no. 21, filed July 10, 2019.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSALIE CHILCOAT,<br><br>      Plaintiff,<br><br>v.<br><br>ZANE ODELL, SAN JUAN COUNTY, and<br>KENDALL G. LAWS,<br><br>      Defendants. | **MEMORANDUM DECISION AND<br>ORDER DENYING PLAINTIFF'S<br>MOTION TO AMEND**<br><br>Case No. 4:19-cv-00027-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Rosalie Chilcoat seeks leave to amend her Complaint[1] to reinstate San Juan County as a defendant and allow thereby additional discovery of the allegations in Ms. Chilcoat's proposed Amended Complaint.[2] San Juan County opposes Ms. Chilcoat's Motion to Amend arguing that the proposed Amended Complaint is futile, and the Motion to Amend is untimely, unduly prejudicial, and brought in bad faith.[3]

Because Ms. Chilcoat's proposed Amended Complaint[4] fails to meet the plausibility standard of Rule 12(b)(6), it is futile and therefore it is contrary to the interests of justice to grant leave to amend. Therefore, Ms. Chilcoat's Motion to Amend is DENIED.

---

[1] Complaint and Jury Demand ("Complaint"), docket no. 2, filed April 10, 2019.

[2] Motion to Amend Complaint ("Motion to Amend"), docket no. 70, filed October 23, 2020.

[3] Opposition to Motion to Amend ("Response"), docket no. 75, filed November 6, 2020.

[4] Amended Complaint, docket no. 72-2, filed October 26, 2020.

## BACKGROUND[5]

This dispute arises out of a criminal prosecution of a wilderness advocate, Plaintiff Rosalie Chilcoat, for an alleged trespassing incident in the Spring of 2017.[6] On April 10, 2019, Ms. Chilcoat filed her original Complaint against San Juan County, San Juan County Attorney Kendall Laws, and Zane Odell.[7] In her Complaint, Ms. Chilcoat alleged Section 1983 claims against Mr. Laws and San Juan County.[8] She asserted that her constitutional rights were violated by a statement that Mr. Laws made during the preliminary hearing about the evidence for a retaliation charge.[9] Ms. Chilcoat also alleged that since Mr. Laws is a final decision-maker for San Juan County, the County should be liable under Section 1983 for Mr. Laws's statement.[10]

On March 30, 2020, an order[11] granted San Juan County and Mr. Laws's motion for judgment on the pleadings[12] dismissing all of Ms. Chilcoat's claims against them. Specifically, the Section 1983 claim against San Juan County was dismissed because there "was no plausible allegation of the existence of an official policy or custom by the County that caused the alleged constitutional violation."[13]

---

[5] The facts set forth below are drawn from the allegations of Ms. Chilcoat's original Complaint and her proposed Amended Complaint, which are accepted as true for purposes of deciding the Motion to Amend.

[6] Amended Complaint ¶¶ 11-13.

[7] Complaint ¶¶ 2-4.

[8] *Id.* ¶¶ 66-74.

[9] *Id.* ¶¶ 67-68.

[10] *Id.* ¶¶ 72-74.

[11] Memorandum Decision and Order Granting San Juan County Defendants' Motion for Judgment on the Pleadings at 9, docket no. 63, filed March 27, 2020.

[12] San Juan County Defendants' Motion for Judgment on the Pleadings, docket no. 21, filed July 10, 2019.

[13] Memorandum Decision and Order Granting San Juan County Defendants' Motion for Judgment on the Pleadings at 9.

2

Ms. Chilcoat's Motion to Amend seeks, based on new evidence, to reinstate San Juan County as a defendant.[14] According to Ms. Chilcoat, the new evidence suggests that her criminal charges were pursued at the direction of, or inducement by, San Juan County's commissioners during a "secret, closed meeting in which they discussed with San Juan County Sheriff Eldredge the gate incident and Rose Chilcoat specifically."[15]

### STANDARD OF REVIEW

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with . . . the court's leave [and] when justice so requires."[16] In making this determination, courts enjoy broad discretion.[17] Reasons for denying amendment include, but are not limited to, "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[18]

Futility is apparent under the standard in Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim upon which relief may be granted.[19] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[20] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss and in evaluating futility on a motion to amend, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[21] However, "the plausibility standard . . . asks for more

---

[14] Motion to Amend at 2.

[15] Amended Complaint ¶ 22.

[16] FED. R. CIV. P. 15(a)(2).

[17] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (internal quotations omitted).

[18] Id. (internal quotations omitted).

[19] FED. R. CIV. P. 12(b)(6); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[21] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

3

than a sheer possibility that a defendant has acted unlawfully."[22] Therefore, to show an entitlement to relief, the facts must "permit the court to infer more than the mere possibility of misconduct."[23]

## DISCUSSION

Section 1983 provides a civil action for the deprivation of Constitutional rights.[24] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[25] A plaintiff can show that a municipal policy or custom violated her Constitutional rights through the decisions of an official with final policymaking authority.[26]

Ms. Chilcoat's proposed Amended Complaint alleges San Juan County violated her "constitutional rights when the San Juan County Commission adopted a decision to direct or encourage the filing of felony charges against [Ms. Chilcoat] in retaliation for her activism."[27] Ms. Chilcoat contends that newly discovered evidence, from the deposition of former County Commissioner Philip Lyman, supports the claim that the County made that decision in a "secret, closed meeting in which [the commissioners] discussed with San Juan County Sheriff Eldredge the gate incident and Rose Chilcoat specifically."[28] "Philip Lyman stated that Ms. Chilcoat was 'widely known and controversial, and there were some criminal discussions that took place

---

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[23] *Id.*

[24] 42 U.S.C. § 1983.

[25] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[26] *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989).

[27] Amended Complaint ¶ 82.

[28] *Id.* ¶ 22.

4

behind closed doors in a closed meeting.'"[29] Ms. Chilcoat also points out that "Philip Lyman made public statements expressing his support of [the] criminal charges."[30]

These allegations support only mere speculation or a possibility that San Juan County made a decision to direct or encourage criminal prosecution against Ms. Chilcoat. Accepted as true, these facts allege a meeting between San Juan County commissioners and Sheriff Eldredge where the commissioners discussed Ms. Chilcoat. Nothing in the proposed Amended Complaint demonstrates that the meeting included the County's decision or encouragement to pursue criminal charges against Ms. Chilcoat. The proposed Amended Complaint does not state a plausible claim for relief under Section 1983. Therefore, it is futile.

**ORDER**

IT IS HEREBY ORDERED that Ms. Chilcoat's Motion to Amend[31] is DENIED.

Signed January 21, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[29] *Id.* ¶ 26.

[30] *Id.*

[31] Docket no. 70, filed October 23, 2020.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSALIE CHILCOAT, an individual<br><br>Plaintiff,<br><br>v.<br><br>ZANE ODELL,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING ZANE ODELL'S [69] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:19-cv-00027-DN<br><br>District Judge David Nuffer |

This dispute arises out of a criminal prosecution of a wilderness advocate, Plaintiff Rosalie Chilcoat ("Chilcoat"), for an alleged trespassing incident in the Spring of 2017.[1] Chilcoat was accused of trespassing by Zane Odell ("Odell"), who she now sues.[2] First, under 42 U.S.C. § 1983, Chilcoat alleges that Odell acted under color of law, violating Chilcoat's constitutional rights.[3] Second, Chilcoat alleges that Odell perpetrated a civil assault on Chilcoat.[4]

Odell's Motion for Summary Judgment ("Motion")[5] argues that Chilcoat cannot show that Odell was acting under color of state law and cannot show that Odell had the requisite intent for the assault.[6] Chilcoat responds that there are questions of fact as to whether Odell acted under color of law and acted with the intent to cause an apprehension of immediate harm.[7] Because a

---

[1] Complaint and Jury Demand ("Complaint"), docket no. 2, filed April 10, 2019.

[2] *Id.*

[3] *Id.* ¶¶ 8-10.

[4] *Id.* ¶¶ 7-8.

[5] Defendant Zane Odell's Motion for Summary Judgment ("Motion"), docket no. 69, filed October 16, 2020.

[6] Motion at 17.

[7] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), docket no. 81, filed November 17, 2020.

jury could not reasonably conclude that Odell was acting under color of law or that Odell had the

intent to cause apprehension of immediate harm to Chilcoat, Odell's Motion[8] is GRANTED.

**Contents**

UNDISPUTED FACTS ........................................................................................................ 2
STANDARD OF REVIEW ............................................................................................... 17
    Admissibility of Evidence on Summary Judgment Motion.............................................. 17
DISCUSSION .................................................................................................................... 18
    Chilcoat's § 1983 claim fails because Odell was not acting under color of law .............. 18
        The Public Function Test is Not Met.................................................................... 19
        The Nexus Test is Not Met .................................................................................. 20
        The Symbiotic Relation Test is Not Met ............................................................. 22
        The Joint Action Test is Not Met......................................................................... 22
    Chilcoat's claim for assault fails because Odell lacked intent to cause apprehension of
        harmful contact to Chilcoat..................................................................................... 25
ORDER.............................................................................................................................. 30

## UNDISPUTED FACTS

These Undisputed Facts were determined by careful examination of the Statement of

Undisputed Material Facts in Odell's Motion[9] and the responses to those facts in "Chilcoat's

Response to Disputed Paragraphs in 'Defendant Odell's Statement of Undisputed Material

Facts'" in Chilcoat's Opposition.[10] These Undisputed Facts also include facts from Chilcoat's

Statement of Undisputed Material Facts in her Opposition.[11] But that section of Chilcoat's

Opposition does not comply with DUCivR 56-1(c)(3) and (4);[12] was not responded to by Odell;

---

[8] Docket no. 69, filed October 16, 2020.

[9] Motion ¶¶ 1-80 at 4-16.

[10] Opposition at 23-30.

[11] *Id.* at 4-22.

[12] For a Statement of Material Facts; Response to Statement of Undisputed Material Facts; and Statement of Additional Material Facts that are more compliant with DUCivR 56-1(c)(3) and (4), see Counterclaim Defendants' Motion for Summary Judgment at 3-11, docket no. 67, filed October 15, 2020; Counterclaim Plaintiff's Response to Counterclaim Defendants' Motion for Summary Judgment at 2-10, docket no. 92, filed November 30, 2020; and Counterclaim Defendants' Reply Memorandum in Support of Motion for Summary Judgment at 2-7, docket no. 95, filed December 14, 2020.

2

is an entirely new narrative of facts; and is largely immaterial to the resolution of Odell's

Motion.

A key location in these facts is Odell's cattle corral in San Juan County, Utah (the

"Corral"). Some persons mentioned are officers of the San Juan County Sheriff's Office

("SJCSO").

1.  On April 1, 2017, Mark Franklin closed a gate along the perimeter of the Corral.[13]

2.  When Odell noticed the closed gate at the Corral, he called the SJCSO's dispatch number.[14]

3.  Sergeant Robert Wilcox ("Sgt. Wilcox") reported to the Corral following Odell's call, and prepared a report about the incident which was authenticated by Sgt. Wilcox during his deposition.[15]

4.  At the Corral, Sgt. Wilcox spoke with Odell and viewed the pictures of a camper (the "Camper") and partial license plate that had been taken by Odell's trail camera.[16]

5.  Sgt. Wilcox performed further investigation at the Corral by observing tire tracks and footprints suspected to belong to whomever had closed the gate.[17]

6.  Sgt. Wilcox then downloaded the photographs from Odell's trail camera to his computer.[18]

---

[13] Motion ¶ 1 at 4; Exh. A at 20:10-22:9.

[14] Motion ¶ 2 at 4; Exh. B at 21:22-22:18.

[15] Motion ¶ 3 at 4; Exh. D at 9:4-9:17.

[16] Motion ¶ 4 at 5; Exh. C at p. 3; Exh. D at 20:10-20:20.

[17] Motion ¶ 5 at 5.

[18] *Id.* ¶ 6 at 5.

3

7.    Sgt. Wilcox then informed Odell that he was going to attempt to locate the Camper in the area, which included checking back roads and other popular camping spots for a camper that matched what was present on the trail camera.[19]

8.    Later that same day, Sgt. Wilcox received word from dispatch that Odell had located what he believed to be the Camper at the Sand Island campground in Bluff, Utah. Sgt. Wilcox proceeded to meet Odell nearby, along with an officer from the Towoac police department.[20]

9.    When Sgt. Wilcox met Odell, Odell stated "we got them," which he states he meant "we" as referring to himself and his daughter, who was working and traveling with Odell that day.[21]

10.    At a motions hearing later on in the prosecution of Chilcoat, Sgt. Wilcox testified that Odell did not specify who the "we" were in that statement.[22]

11.    Odell asked Sgt. Wilcox to speak to the occupants of the camper at the Sand Island campground.[23]

---

[19] *Id.* ¶ 7 at 5.

[20] *Id.* ¶ 8; Exh. C at p. 3; Exh. D at 27:19-28:3.

[21] Motion ¶ 9 at 5; Exh. B at 92:9-92:12 ("Who did you mean by 'we'?" A: "My daughter and I."). While Chilcoat referred to testimony of Sgt. Wilcox that his understanding that "we" "possibly" meant Sgt. Wilcox and Odell, Sgt. Wilcox never testified as to his actual understanding. Opposition at 3; Exhibit J to Opposition, Testimony of Rob Wilcox, 33:13-15.

[22] Motion ¶ 10 at 5. While Odell's testimony clearly stated his intent in using "we," Sgt. Wilcox testified that at the time he thought it was "possible" that Odell meant "we" to include Sgt. Wilcox. *See* Motion, Exh. F, pp. 27:22-28:3, 68:24-69:15; Exh. J, p. 33:15-20 ("Q. And 'we' was you and him?" "A. He didn't specify." "Q. Was that your understanding, though?" "A. Possibly, yeah.").

[23] Opposition at 23; *see also* Motion, Exh. F at 29:12-18, 29:20-31:3 ("Q. [I]s it a true statement that Mr. Odell said, 'The camper's parked there at the Sand Island Campground, just asked me' – meaning you – "to go, you know, ask them some questions about it." "A. Yes.").

4

12.     Sgt. Wilcox interviewed the occupants of the camper about the closing of the gate at the Corral and ultimately determined that they were not involved and that it was not the Camper at issue.[24]

13.     While Odell asked Sgt. Wilcox to speak with the occupants of the camper at the Sand Island campground, Sgt. Wilcox testified that he would have performed that portion of his investigation whether or not Odell had asked him to.[25]

14.     After Sgt. Wilcox informed Odell that it was not the same camper, he told Odell that he would continue searching for the subject Camper, and Odell responded that he would do the same.[26] They agreed to tell each other if they found anything.[27]

15.     Sgt. Wilcox testified that he got the impression that Odell would be proactive in the case, and that it was not an unusual thing for a victim to be involved in a case like this.[28]

16.     After checking a couple of additional locations for the Camper, Sgt. Wilcox sent the information on the Camper, along with the trail camera pictures, to other officers at the SJCSO, and made a Facebook post under the SJCSO's official page to attempt to get the public's help in locating the Camper.[29]

---

[24] Motion ¶ 11 at 5-6; Exh. C at 3 ("[Odell] told me where the camper was … I went up to them and made a little small talk. I then started asked them about places they had been."); Exh. D at 23:4-23:7, 26:19-27:10.

[25] Motion ¶ 12 at 6; *but see* Opposition, Exh. D at 70:2-70:6, 70:20-71:4 ("So, regardless if Mr. Odell told you that, was that what you were planning on doing when you got there?" "Yes.").

[26] Motion ¶ 13 at 6. *See* Opposition, Exh. C at p. 3; *see also* Exh. D at 71:5-71:9.

[27] Opposition at 23-24; *see also* Motion, Exh. J at 36:13-24 ("Q. And you were both going to continue to investigate the circumstances? A. Yeah." "Q. And he was going to let you know if the found anything? A. And vice versa, yes.").

[28] Motion ¶ 14 at 6.

[29] Motion ¶ 15 at 6.

5

17.     On April 3, 2017, Odell was putting a pump into a well located within the Corral, and was being assisted by a neighboring rancher, Zeb Dalton, and Mr. Dalton's hired help, Torrance Weaver.[30]

18.     Odell later recounted the events of that day in a Voluntary Statement Form he prepared on or about April 4, 2017, at the request of Sgt. Wilcox, which Odell authenticated during his deposition.[31]

19.     While working on the installation of the pump, Odell caught a glimpse of the Camper he had seen in the trail camera photographs.[32]

20.     When Odell saw the Camper, he left his pickup truck, whistled at Mr. Dalton, pointed at the Camper, and took off running towards the Camper.[33]

21.     Based on the distance from where Odell was working to where the Camper would intersect with the road to the Corral, Odell knew it was not physically possible for him to catch the Camper.[34]

22.     At the preliminary hearing in the prosecution of Chilcoat, Odell stated that his purpose in running to catch the Camper was to stop the vehicle and see if the license plate on the Camper matched the picture from his trail camera.[35]

---

[30] *Id.* ¶ 16.

[31] *Id.* ¶ 17 at 6-7.

[32] *Id.* ¶ 18 at 7; Exh. B at 54:8-54:24 ("you said you caught a glimpse of the trailer; is that right?" "Yes, ma'am."); *see also* Exh. F at p. 5; *but see* Opposition, Exh. D at 55:4-10, 55:21-24 ("… so we can check license plate to confirm it is a match").

[33] Motion ¶ 19 at 7; Exh. B at 55:7-56:9; Exh. F at p. 5; *but see* Opposition at 24; Exh. K, pp. 16:14-17:14, 17:25-18:4; Exh. D, pp. 55:21-56:22.

[34] Motion ¶ 20 at 7.

[35] *Id.* ¶ 21 at 7; Exh. B at 56:9-56:14, 92:1-92:5; *but see* Opposition at 24; Exh. G, p. 14:20–15:8 (was running "to try to get to the road to stop and talk to them," and "Zeb Dalton drove his pickup there because that was a lot faster than my running. When we did get there, then we stopped.")

6

23.     On that day, Odell did not provide any other cue or instruction to Mr. Dalton, and prior to spotting the Camper, had only asked Mr. Dalton to keep an eye out for it.[36]

24.     Mr. Dalton proceeded to drive his pickup truck past Odell, who was running along the road that accessed the Corral. Odell then fell or dove out of the way.[37]

25.     Both Chilcoat and Mr. Franklin (who were traveling in the Camper) witnessed the pickup truck speed past Odell, who had fallen or dove, which Chilcoat described in a statement she prepared and authenticated in her deposition.[38]

26.     Mr. Dalton then pulled his pickup across the road that the Camper was traveling on right up to the bank on the other side, blocking the travel of the Camper.[39]

27.     Mr. Dalton testified that Odell never instructed him to stop the Camper as he did on April 3, 2017.[40]

28.     When Mr. Dalton exited the pickup truck after blocking the Camper's path, Chilcoat testified that Mr. Dalton aggressively approached them, by running towards the driver's side, while gesturing and yelling at Chilcoat and Mr. Franklin.[41]

29.     Odell and Mr. Weaver reached the Camper, after Mr. Dalton had stopped it, and Odell proceeded to catch his breath following his sprint.[42]

---

[36] Motion ¶ 22 at 7; Exh. B at 56:8-56:17, 90:18-90:24, 92:6-92:8; Exh. G at 10:14-10:25, 17:9-17:24.

[37] Motion ¶ 23 at 7; Exh. G at 17:25-18:17; Exh. A at 42:5-42:12 ("then I see one of the cowboys falling, and I go, Oh, my God that truck is going to run over one of the guys. I can't remember which one of the two fell. The pickup truck then passed them."); *but see* Opposition, Exh. E at 42:5-12. Whether Odell fell or dove out of the way is immaterial.

[38] Motion ¶ 24 at 7-8; Exh. A at 42:5-42:12; Exh. H at 11:8-12:13; Exh. I at 3.

[39] Motion ¶ 25 at 8.

[40] *Id.* ¶ 26.

[41] *Id.* ¶ 27.

[42] *Id.* ¶ 28.

7

30.     While Odell was running towards the Camper and then catching his breath, Chilcoat did not find Odell's behavior aggressive, nor did she think that Odell was intending to cause her harm.[43]

31.     Mr. Dalton continued to yell at Chilcoat and Mr. Franklin, while Odell and Mr. Weaver remained mostly quiet while affirming Mr. Dalton's actions and speech by nodding their heads.[44]

32.     At this point in time, Chilcoat and Mr. Franklin both testified that Odell seemed to be mainly affirming Mr. Dalton's actions.[45]

33.     Odell asked Mr. Franklin if Mr. Franklin had shut the gate, why Mr. Franklin had done that, and whether Mr. Franklin thought that was helpful.[46]

34.     While having this conversation, Odell did not touch the Camper Chilcoat and Franklin were riding in, nor did he attempt to enter it.[47]

35.     Odell proceeded to call the SJCSO in order to report the encounter with Chilcoat and Mr. Franklin.[48]

36.     When Odell told dispatch that day that "we got them," the "we" Odell was referring to was himself and Mr. Dalton.[49]

---

[43] Motion ¶ 29 at 8.

[44] *Id.* ¶ 30 at 8; Exh. A at 46:4-49:2; 27:4-9; 30:21-31:1 ("[Odell] was affirming with his body and head what Zeb was saying."), Exh. E at 46:4-47:4, 48:10-49:7; Exh. G at 97:10-17.

[45] Motion ¶ 31 at 8; Exh. H at 29:16-29:25, 31:2-31:22, 35:11-36:6; *see also* Exh. A at 48:24-49:7, 35:11–36:3 ("Odell never turned and looked at us."); Exh. E at 51:2-25 ("Zane [Odell] said, 'You can take all the pictures you want. We've got you on camera. We've got videos of you. Zane was saying all that.'").

[46] Motion ¶ 32 at 9.

[47] *Id.* ¶ 33.

[48] *Id.* ¶ 34.

[49] *Id.* ¶ 35.

8

37. Even though Chilcoat wrote that "[w]e were being unlawfully detained by some crazy scary cowboys in the middle of nowhere," neither Chilcoat nor Mr. Franklin attempted to call 911.[50]

38. While Chilcoat could not know whether Odell was actually calling the sheriff, Chilcoat had no reason to distrust that Odell was doing so based on her past encounters with him, and was given a sense of a relief by him doing so.[51]

39. While Mr. Franklin could not know whether Odell was actually calling the sheriff, Mr. Franklin did not feel the need to call 911, and assumed that the officer would arrive in only a few minutes, even though he had no idea how long it could take.[52]

40. Mr. Franklin later stated that he did not feel an imminent threat of being struck, or an imminent threat that Mr. Dalton, Odell, or Mr. Weaver were going to physically attack him.[53] However, he also testified that he was concerned for his safety.[54]

41. Chilcoat never told Mr. Franklin that she felt like there was an imminent threat she would be struck, or that Mr. Dalton, Odell, or Mr. Weaver were going to attack her.

42. Chilcoat described being fearful of the ranchers laughing at the situation, because she thought "they were feeling empowered and happy about something."[55]

---

[50] Motion ¶ 36 at 9; Exh. H at 34:3-34:7; Exh. A at 53:1-53:5; *but see* Opposition, Exh. A at 34:3-18.

[51] Motion ¶ 37 at 9; Exh. H at 34:3-34:21.

[52] Motion ¶ 38 at 9.

[53] Motion ¶ 39 at 10; Exh. A at 54:8-54:13 ("Did you feel an imminent threat of being struck?' "No." "That any of the ranchers were going to physically attack you?" "No.")

[54] Opposition, Exh. E, p. 52:1-18 ("I was basically fearful of my safety at that time, yes."), 54:20-24, 55:4-15.

[55] Motion ¶ 41 at 10; Exh. H at 37:5-37:10.

9

43.     Chilcoat also testified that she thought the men were crazy and scary, that they would not answer questions about what was happening, that she was traumatized, and that the situation was high-adrenaline and she hoped it would de-escalate.[56]

44.     While Odell was on the phone with the SJCSO dispatcher, Mr. Franklin asked Mr. Dalton questions regarding why Mr. Dalton had stopped the Camper, and Mr. Dalton continued to yell at Chilcoat and Mr. Franklin.[57]

45.     Mr. Dalton repeatedly informed Mr. Franklin that Mr. Franklin would find out why Mr. Dalton stopped him when the sheriff arrived.[58]

46.     Mr. Dalton also informed Mr. Franklin that they had pictures of Mr. Franklin closing the gate, in an attempt to bluff Mr. Franklin, even though Odell never told Mr. Dalton that such pictures existed.[59]

47.     Mr. Dalton and Odell both falsely stated that they had photographs of Mr. Franklin and Chilcoat closing the gate.[60]

48.     Chilcoat proceeded to exit the Camper to take pictures of Mr. Dalton, Odell, and Mr. Weaver, and of Mr. Dalton's pickup truck and license plate, after which she got back into the Camper.[61]

49.     Deputy Jay Begay ("Dep. Begay") received the call from dispatch to report to the Corral, and arrived there in approximately 10 minutes.[62]

---

[56] Opposition at 26; Exh. A, p. 29:5 – 30:25; p. 34:3-14; p. 35:11–36:3; p. 37:1-10; p. 42:23–44:19; Exh. D, p. 58:8-14; Exh. K, p. 21:6 – 22:20.

[57] Motion ¶ 42 at 10.

[58] *Id.* ¶ 43.

[59] *Id.* ¶ 44; Exh. G at 27:17-28:24.

[60] Opposition at 26; Exh. E at 51:2-25; Exh. K at 27:17–30:3.

[61] Motion ¶ 45 at 10.

[62] Opposition at 26; Exh. E at 51:2-25; Exh. K at 27:17 – 30:3

10

50.     When Dep. Begay arrived at the Corral, he approached Mr. Dalton, Odell, Mr. Weaver, and Mr. Franklin at the location where Mr. Dalton's truck had blocked the Camper, which is shown on Dep. Begay's bodycam footage and was authenticated during Dep. Begay's deposition.[63]

51.     Dep. Begay testified at the motions hearing in the prosecution of Chilcoat that the mood was not very tense when he arrived at the scene that morning, though it escalated later on.[64]

52.     Dep. Begay introduced himself and proceeded to ask Mr. Franklin whether Mr. Franklin had closed the gate to the Corral, which Mr. Franklin immediately admitted to.[65]

53.     Mr. Franklin suggested that Dep. Begay go and look at the Corral with him, and Dep. Begay, Mr. Franklin, and Odell proceeded to walk towards the Corral, while Mr. Dalton and Mr. Weaver rode back in Mr. Dalton's truck.[66]

54.     While walking towards the Corral, Odell asked Mr. Franklin questions about whether Mr. Franklin knew this was State trust land versus public land, why Mr. Franklin closed the gate, and where Mr. Franklin was from.[67] Mr. Franklin later characterized this as an interrogation.[68] However, Dep. Begay described it as a debate.[69]

---

[63] Motion ¶ 47 at 11.

[64] *Id.* ¶ 48 at 11; Exh. E at 71:4-71:14; *see also* Opposition at 27; Exh. J at 71:4-14, 109:2-11; Exh. E at 55:4-15.

[65] Motion ¶ 49 at 11.

[66] *Id.* ¶ 50.

[67] *Id.* ¶ 51; Exh. L at 1:06-2:44; *see also* Exh. M at 56:18-57:15 ("In your report you described when Mr. Odell was asking questions of Mr. Franklin, that they were debating. Is that right?" "That was my interpretation, yes.").

[68] Opposition at 27; Exh. E at 36:1-11 ("I was being interrogated mostly by Zane Odell and Zeb Dalton."), 60:19-61:1 ("But [Begay] was allowing Mr. Odell to ask most of the questions so that threw me for a loop"), Exh. J at 109:2-11; Exh. N at 10:00:34–10:15:45.

[69] Motion at 11; Exh. M at 56:18-57:15 ("In your report you described when Mr. Odell was asking questions of Mr. Franklin, that they were debating. Is that right?" "That was my interpretation, yes.")

11

55.     Upon reaching the Corral, Dep. Begay questioned the men regarding the gate closing, and Odell and Mr. Franklin informed Dep. Begay of what they had done and observed.[70]

56.     Odell again repeated some of the questions he had asked Mr. Franklin when they were walking from the vehicles to the Corral and Odell appeared to become annoyed by Mr. Franklin's conduct in closing the gate and his answers to the questions.[71]

57.     Dep. Begay interrupted the squabbling and walked Mr. Franklin back to the vehicles approximately two (2) minutes after they all arrived at the Corral. Dep. Begay continued to interview Mr. Franklin during their walk back, during which time Mr. Franklin again admitted multiple times to closing the gate.[72]

58.     Dep. Begay then instructed Franklin to return to his vehicle and that he would be calling Sgt. Wilcox to report in since Sgt. Wilcox had begun the investigation on April 1, 2017.[73]

59.     Dep. Begay then returned to his truck and called Sgt. Wilcox, and told Sgt. Wilcox that he had had to separate the parties because they were "arguing over the same moot point."[74]

60.     Dep. Begay informed Sgt. Wilcox that Odell wanted to press charges, which both Mr. Dalton and Odell stated to Dep. Begay in front of Mr. Franklin.[75]

---

[70] Motion ¶ 52 at 11-12; Exh. L at 2:55-3:42; *but see* Opposition at 27; Exh. B at 19:21–20:5; Exh. E at 36:1-11 ("I was being interrogated mostly by Zane Odell and Zeb Dalton. Deputy Begay asked me – if you look at the body camera, he asked me very few questions."); 60:19–61:1 ("[Begay] was allowing Mr. Odell to ask most of the questions so that threw me for a loop.").

[71] Motion ¶ 53 at 12.

[72] *Id.* ¶ 54.

[73] *Id.* ¶ 55.

[74] *Id.* ¶ 56.

[75] *Id.* ¶ 57.

12

61.    Sgt. Wilcox instructed Dep. Begay to get the rest of the parties' information, and that since Mr. Franklin had admitted to closing the gate, that no further pictures of the prints were necessary, although it would still help.[76]

62.    Sgt. Wilcox then told Dep. Begay that they would screen the case with the San Juan County Attorney, Kendall Laws, and that trespassing charges were the only likely charges available, and the two hung up the call.[77]

63.    Dep. Begay then checked in with dispatch, ran checks on Mr. Franklin's plates and driver's license.[78]

64.    Dep. Begay also received a call while awaiting results on Mr. Franklin's driver's license, which appeared to be from the Sheriff of San Juan County, and Dep. Begay proceeded to inform him of the progress of the investigation.[79]

65.    Dep. Begay then drove his truck up to the Camper to return Mr. Franklin's driver's license to him, informed Mr. Franklin and Chilcoat that he was going to return to speak with Mr. Dalton, Odell, and Mr. Weaver, informed Chilcoat and Mr. Franklin of the next steps of the investigation, requested Mr. Franklin's contact information and Chilcoat's name, and gave Mr. Franklin a SJCSO business card with Dep. Begay and Sgt. Wilcox's contact information on it.[80]

66.    Dep. Begay then moved his truck and allowed Mr. Franklin and Chilcoat to leave.[81]

---

[76] Motion ¶ 58 at 12-13; Exh. L at 9:01-9:12; *see also* Opposition at 27-28; Exh. N, 10:19:13.

[77] Motion ¶ 59 at 13.

[78] *Id.* ¶ 60.

[79] *Id.* ¶ 61.

[80] *Id.* ¶ 62.

[81] *Id.* ¶ 63.

13

67.     While Dep. Begay was speaking with Chilcoat and Mr. Franklin back at the Camper, neither Chilcoat nor Mr. Franklin made a report to Dep. Begay regarding any alleged assault, detention, or kidnapping by Mr. Dalton, Odell, or Mr. Weaver, nor did they tell Dep. Begay that they were in fear or distress in any way.[82]

68.     Chilcoat testified that she did not make a complaint because she believed that her former position with the Great Old Broads for Wilderness would cause any member of the SJCSO to not act in her best interests, even though nobody had spoken about that organization to Dep. Begay prior to Chilcoat and Mr. Franklin leaving the scene.[83] Chilcoat also testified that she did not believe Dep. Begay would be receptive to a complaint, particularly as Dep. Begay had been letting Odell interrogate Mr. Franklin.[84]

69.     Dep. Begay then returned to Odell and asked Odell what charges he wanted to tell the County Attorney,[85] Odell and Mr. Dalton expressed their concerns for the cows if they had been unable to access water, and Dep. Begay interviewed the ranchers further.[86]

70.     Dep. Begay informed Odell that Mr. Laws would be calling Odell when Mr. Laws was briefed on the investigation and ready to speak with Odell.[87]

71.     When Odell and Mr. Dalton asked for Chilcoat and Mr. Franklin's names, Dep. Begay deflected the questions.[88]

---

[82] Motion ¶ 64 at 13-14.

[83] *Id.* ¶ 65 at 14; Exh. H at 43:23-45:14; *see also* Exh. L at 0:00-17:21.

[84] Opposition at 28; Exh. A, p. 44:20–45:1

[85] Opposition at 28; Exh. N, 10:18:57; 10:26:16.

[86] Motion ¶ 66 at 14; Exh. L at 17:46-22:03.

[87] Motion ¶ 67 at 14.

[88] *Id.* ¶ 68.

14

72.     The Great Old Broads for Wilderness was brought up when Mr. Dalton mentioned that it was an environmental organization based in Durango, Colorado.[89]

73.     At this point, Dep. Begay reminded Odell that Odell said he wanted to press charges. Odell responded that he wanted to go as far as possible so that, "in their environmental world and social media, the rest of them will catch on."[90]

74.     Dep. Begay then turned the conversation back to Odell's contact information so Mr. Laws could contact Odell when Mr. Laws was ready to, proceeded to take down Mr. Dalton and Mr. Weaver's names, and continued to speak with the ranchers.[91]

75.     When Odell again asked for Chilcoat and Mr. Franklin's names, Dep. Begay again deflected the question, and informed Odell that Dep. Begay would need to run it by Sgt. Wilcox.[92]

76.     Dep. Begay then spoke with the ranchers for a couple more minutes, instructed them to call the SJCSO if they found any other issues in the area, and then departed from the scene approximately 30 minutes after he arrived.[93]

77.     This was the first time that Dep. Begay had met Odell, and after that interaction, Dep. Begay did not recall having another conversation with Odell, and that if he had had one, it would have been detailed in a supplemental report.[94]

---

[89] Motion ¶ 69 at 14; Exh. L at 22:55-24:07; *but see* Opposition at 28; Exh. D at 66:16-21.

[90] Opposition at 28-29; Exh. N at 10:23:04-10:26-13.

[91] Motion ¶ 70 at 14; Exh. L at 24:08-26:59.

[92] Motion ¶ 71 at 15.

[93] *Id.* ¶ 72.

[94] *Id.* ¶ 73.

15

78. Dep. Begay later testified that the investigation of the gate closing incident at the Corral was the same as any of the other 200 or so scenes he had investigated in his several years as a deputy with the SJCSO.[95]

79. Sgt. Wilcox testified that there was nothing unusual about the investigation of the gate closing incident at the Corral as compared to the 500 or so other investigations he had been involved with during his 12 years doing patrol operations with the SJCSO.[96]

80. When Mr. Laws was presented with the investigation regarding Chilcoat and Mr. Franklin by the SJCSO, it appeared to follow the same general practice of the typical cases he would receive, as compared to the somewhere between 1200 and 1400 cases in his career as a prosecutor.[97]

81. During the course of Mr. Laws's prosecution of Chilcoat's and Mr. Franklin's cases, he generated over 1000 pages of documents and filings.[98]

82. Mr. Laws kept Odell appraised of the prosecution, and involved in the various steps of the case, based on Mr. Laws's obligations to Odell pursuant to the Victims' Bill of Rights.[99]

---

[95] Motion ¶ 74 at 15; Exh. M at 63:11-63:22; *but see* Opposition at 29 (pointing out that at the time of the incident, Dep. Begay had investigated approximately 50 scenes); Exh. B at 48:16–49:20 ("So, your experience in investigations to that point, how many times had you gone out on a call?" "I don't remember how many calls I had at that point." "Maybe more than a hundred or less? Just trying to get a ballpark." "It was definitely less than a hundred.").

[96] Motion ¶ 75 at 15; Exh. D at 67:10-68:18.

[97] Motion ¶ 76 at 15-16; Exh. O at 69:18-69:24, 72:5-72:14 ("was there anything about the investigation that was brought to you … weird or different … than the files typically brought to you for prosecution?" "No. It seemed to follow the same general practice of what I'm used to dealing with.").

[98] Motion ¶ 77 at 16; Exh. O at 75:25-76:22.

[99] Motion ¶ 78 at 16.

16

83.     While Odell expressed his desire to see Chilcoat convicted, Mr. Laws testified that it was not uncommon for a victim of a crime to express such desire.[100]

84.     While Odell had a role in the plea negotiations for Chilcoat's criminal case, Mr. Laws was clear with Odell that any decision was ultimately Mr. Laws's call.[101]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[102] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[103] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[104]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[105]

### Admissibility of Evidence on Summary Judgment Motion

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[106] "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."[107]

---

[100] Motion, *supra*, note 3, ¶ 79 at 16.

[101] *Id.* ¶ 80 at 16; Exh. O at 79:5-79:23.

[102] Fed. R. Civ. P. 56(a).

[103] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[104] *Id.*

[105] *Id.* at 670-71.

[106] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (citations and quotation marks omitted).

[107] *Id.* at 999 n.15 (citations and quotation marks omitted).

17

## DISCUSSION

Chilcoat claims Odell acted under "color of law," violating Chilcoat's constitutional rights and that Odell also perpetrated an assault on Chilcoat.[108] Odell argues in his Motion that these claims fail as a matter of law because (1) Odell was not acting under color of law as a state actor, and (2) Odell did not act with the intent to cause harmful or offensive contact or with intent to cause imminent apprehension of such.[109] The Undisputed Facts demonstrate that no reasonable jury could find Odell liable under either of Chilcoat's claims.

**Chilcoat's § 1983 claim fails because Odell was not acting under color of law**

42 U.S.C. § 1983 allows citizen-plaintiffs to seek remedies against State actors for unlawful deprivation of federal rights.[110] To state a claim under § 1983, a party must allege that the defendant deprived him of a federal right, and that the defendant acted under color of law.[111] While § 1983 claims are usually brought against government employees, private persons may be liable when their conduct is "fairly attributable to the State."[112]

The Supreme Court has followed a two-prong approach to determine whether conduct is fairly attributable to the State.[113] "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible."[114] This may be shown when "the authority of [S]tate

---

[108] Complaint, *supra*, note 1, ¶¶ 52-65 at 15-17.

[109] Motion, *supra*, note 3, 19-30, 36-39.

[110] *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002).

[111] *Id.* (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)).

[112] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also*, *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002).

[113] *Lugar*, 457 U.S. at 937.

[114] Id. at 937, 940.

18

officials . . . put the weight of the State behind [a defendant's] private decision."[115] "Second, the party charged with the deprivation must be a person who may fairly be said to be a [S]tate actor."[116] To determine if the second prong is satisfied, "[t]he [c]ourt has taken a flexible approach," applying a variety of tests, including the four cited by the parties in this case: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test, and (4) the joint action test.[117] This decision focuses on the second prong, because Odell cannot be said, on the Undisputed Facts, to be a State actor.

**The Public Function Test is Not Met**

The "public function test" looks to whether the State has delegated "a function traditionally exclusively reserved to the States" to a private party.[118] This is considered "an arduous standard to satisfy" primarily because "very few [functions] have been exclusively reserved to the State."[119] Typical actions found to be public functions include holding elections or the management of a city park.[120] Private parties performing these functions are considered State actors because they performed a service traditionally under the exclusive prerogative of the State.[121]

While Chilcoat concedes that performing an arrest, investigating crimes, and interrogating witnesses are not functions exclusively reserved to the State,[122] she argues that the

---

[115] *Id.* (internal quotation marks and citations omitted); *see also Johnson* at 1202.

[116] *Id.* at 937.

[117] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995)

[118] *Johnson*, 293 F.3d at 1203.

[119] *Id.*

[120] *See id.* (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 356 (1974)).

[121] *Id.*

[122] Opposition at 34.

19

authority to bring charges for criminal prosecution is within the exclusive purview of the State.[123] Specifically, Chilcoat argues that the San Juan County Attorney delegated his authority to bring criminal charges by relying upon photographs brought to him by Odell.[124]

At best, Chilcoat shows only that Odell provided the SJCAO with photographic evidence, which is not an action exclusively reserved to the State. There is no evidence that Odell was tasked with bringing the criminal charges, including the retaliation charge, against Chilcoat. Mr. "Laws was clear with Odell that any decision was ultimately Laws'[s] call."[125] Therefore, the Undisputed Facts demonstrate that Odell was not a State actor under the public function test, and no reasonable jury could find otherwise.

**The Nexus Test is Not Met**

Under the "nexus test," a plaintiff must show "a sufficiently close nexus" between the government and the challenged conduct such that the conduct "may be fairly treated as that of the State itself."[126] "[A] [S]tate normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[127] Merely availing oneself of State judicial procedures is insufficient to constitute State action.[128] And "a [S]tate official's mere approval of or acquiescence to the conduct of a private party is insufficient to establish the nexus required for [S]tate action."[129]

---

[123] *Id.*; *see also* Utah Code §§ 77-2-1, 77-2-1.1.

[124] Opposition at 35.

[125] *See supra* Undisputed Facts ¶ 84.

[126] *Gallagher*, 49 F.3d at 1448 (citing *Jackson*, 419 U.S. at 351)

[127] *Johnson*, 293 F.3d at 1196 (internal quotations and citations omitted).

[128] *See id.*

[129] *Gallagher*, 49 F.3d at 1450.

20

Chilcoat argues that the SJCSO "provided significant assistance to Odell" by "delegat[ing] important parts of its investigation to Odell."[130] However, the facts highlighted by Chilcoat fail to move beyond mere acquiescence and into significant State encouragement. Rather, Odell's actions and the SJCSO's actions are akin to a typical victim-law enforcement relationship.

Odell provided the SJCSO with photographs and witness testimony, and the SJCSO relied upon that evidence.[131] Obtaining evidence and relying upon that evidence does not constitute significant encouragement.[132] It is routine for law enforcement to work with victims to obtain evidence of a crime.[133]

While Sgt. Wilcox followed through on Odell's request for him to interview the campers at the Sand Island campground, Wilcox explained that he would have done this regardless.[134] It is also true that Odell stated on his call to the police that "we're holding them for you", but the only response given by the dispatcher was "okay I'll get one [(an officer)] down there for ya."[135] This was not a direction by the dispatcher that Odell continue to detain Chilcoat.

Dep. Begay did allow Odell to do most of the questioning of Mr. Franklin. However, the Undisputed Facts demonstrate that Dep. Begay's actions did not go beyond approval or acquiescence of Odell's questioning. Dep. Begay also asked Odell what kind of charges Odell

---

[130] Opposition, *supra*, note 7, at 37.

[131] *Supra* Undisputed Facts ¶¶ 4-6, 55, 82.

[132] *See Johnson*, 293 F.3d at 1196.

[133] *Supra* Undisputed Facts ¶ 82 at 16.

[134] *Id.* ¶ 13; *see also* Motion for Summary Judgment ¶ 12 at 6; Opposition, Exh. D at 70:2-70:6, 70:20-71:4 ("So, regardless if Mr. Odell told you that, was that what you were planning on doing when you got there?" "Yes.").

[135] Motion for Summary Judgment at 23; *see also* Exh. J-K.

21

wanted conveyed to the County Attorney.[136] But it is not out of the ordinary for police to ask a victim about pressing criminal charges.

Nothing in the Undisputed Facts shows direction or significant encouragement on the part of the SJCSO.[137] At most, the facts represent mere approval, acquiescence, and nothing beyond the normal police-victim relationship, and no reasonable jury could find otherwise.

**The Symbiotic Relation Test is Not Met**

Under the "symbiotic relation test," the State must have "so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity."[138] "[A] private party's mere invocation of [S]tate legal procedures does not constitute joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law."[139] Chilcoat fails to respond to this test in her Opposition[140] and has not established any material facts to support its application in this case. Based on the Undisputed Facts, no reasonable jury could find liability for Odell under the symbiotic relation test.

**The Joint Action Test is Not Met**

Under the joint action test, a court will find State action when a private party is a "willful participant in joint action with the [S]tate or its agents."[141] State action is present when "there is a substantial degree of cooperative action between [S]tate and private officials . . . or if there is

---

[136] *Supra* Undisputed Facts ¶¶ 60-62, 69, 73.

[137] *See supra* Undisputed Facts ¶¶ 13-15 ("Sgt. Wilcox testified that he got the impression that Odell would be proactive in the case, and that it was not an unusual thing for a victim to be involved in a case like this.").

[138] *Gallagher*, 49 F.3d at 1451 (internal citations and quotations omitted).

[139] *Johnson*, 293 F.3d at 1205 (internal alterations omitted) (citing *Lugar*, 457 U.S. at 939 n. 21 (internal quotations omitted)).

[140] *See* Opposition, *supra*, note 7, at 33-41.

[141] *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

22

overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights."[142]

When a private citizen works with law enforcement, the citizen does not act under color of law merely by reporting an alleged crime or providing information to police officers who take further action. Rather, joint action is shown when an arrest stemmed from "concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise State power."[143] The mere acquiescence of a State official in the actions of the private party is not sufficient.[144]

Courts have found a private citizen to be acting under color of law where law enforcement relied solely upon the citizen's evidence, without any independent investigation.[145] In *Lusby v. T.G. & Y. Stores, Inc.*, a security guard reported a suspected shoplifter to police who then picked up the plaintiffs, handcuffed and frisked them, and took them to jail without interviewing witnesses or conducting an independent inquiry to determine probable cause for the arrest.[146] The security guard was ruled a State actor, in part, because the police "relied entirely on [the security guard's] word," and "made no independent investigation of the shoplifting" before making the arrest.[147] Conversely, in *Schaffer v. Salt Lake City Corp.*, the court did not find State action because the police officer "made the decision to arrest and book [the plaintiff] only after

---

[142] *Gallagher*, 49 F.3d at 1453-54.

[143] *Id.* at 1454.

[144] *See* id. at 1453.

[145] *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1430 (10th Cir. 1984), cert. granted, judgment vacated on other grounds sub nom. *City of Lawton, Oklahoma v. Lusby*, 474 U.S. 805, 106 S. Ct. 40, 88 L. Ed. 2d 33 (1985).

[146] *Id.*

[147] *See id.*

23

conducting an independent investigation."[148] Specifically, the officer had obtained witness statements and photographs; located the offending truck at the plaintiff's home; and observed handprints and marks on the truck consistent with the story.[149]

In this case, the Undisputed Facts are more like those in *Schaffer*, where an independent investigation was made. First, although Odell assisted in the initial investigation, the SCJSO took several independent investigative steps. While Odell provided photographs and witness testimony, Sgt. Wilcox independently attempted to locate the Camper by checking back roads and other popular camping spots.[150] Later, Odell asked Sgt. Wilcox to interview some occupants of a camper he believed to be the one in question.[151] However, not only did Sgt. Wilcox testify that he would have performed this interview regardless of the request, Sgt. Wilcox independently followed through with this step by interviewing the campers on his own, and then made the determination, by himself, that they were not involved.[152] Sgt. Wilcox also continued to search for the Camper; provided information to other SJCSO deputies regarding the Camper; and created a Facebook post to get help from the public in locating it.[153] These actions are all independent investigation by Sgt. Wilcox.

Second, in addition to Odell's questioning of Mr. Franklin, Dep. Begay performed his own questioning, along with other independent investigation. Before Dep. Begay arrived, Odell had already started to question Mr. Franklin at the Corral.[154] However, once Dep. Begay arrived,

---

[148] *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151 (10th Cir. 2016).

[149] *Id.*

[150] *Supra* Undisputed Facts ¶ 7 at 4.

[151] *Id.* ¶ 11 at 4.

[152] *Id.* ¶¶ 12-13 at 5.

[153] *Id.* ¶¶ 14-16.

[154] *Id.* ¶ 33 at 8.

24

Dep. Begay proceeded to ask Mr. Franklin whether he had closed the gate, which Mr. Franklin admitted.[155] Then, on the way to check out the Corral, Odell asked Mr. Franklin additional questions.[156] But once they reached the Corral, Dep. Begay questioned both of Odell and Mr. Franklin regarding the gate closing.[157] Later, even after Odell began repeating questions he had asked Mr. Franklin earlier, Dep. Begay interrupted and walked Mr. Franklin back to his vehicle, continuing to interview Mr. Franklin.[158] Again, Mr. Franklin admitted to Dep. Begay multiple times to closing the gate.[159] Each of these actions taken by Dep. Begay constitute investigative actions independent from those of Odell. Thus, like the officer in *Schaffer*, Sgt. Wilcox and Dep. Begay conducted independent investigations and did not solely rely upon the evidence conveyed to them by Odell.

Therefore, the Undisputed Facts demonstrate that Odell's conduct is not fairly attributable to the State. And under each of the *Gallagher* tests, the Undisputed Facts clearly show that, while Odell was relatively involved in the investigation of the gate closing, Odell's actions were nothing more than those of a normal victim of a crime. No reasonable jury could find otherwise.

**Chilcoat's claim for assault fails because Odell lacked intent
to cause apprehension of harmful contact to Chilcoat.**

In order for Chilcoat to prove her civil assault claim, she must show: (1) "[t]he defendant acted, intending to cause harmful or offensive contact with the plaintiff, or imminent apprehension of such contact;" (2) "[a]s a result, the plaintiff was thereby put in imminent

---

[155] *Id.* ¶ 52 at 11.

[156] *Id.* ¶ 54.

[157] *Id.* ¶ 55 at 12.

[158] *Id.* ¶ 57 at 12.

[159] *Id.*

apprehension of [harm] [contact];" and (3) "[t]he plaintiff suffered injuries proximately caused by the defendant's actions."[160] "An act is done with the intention of putting the other in apprehension of an immediate harmful or offensive contact if it is done for the purpose of causing such an apprehension or *with knowledge that, to a substantial certainty, such apprehension will result*."[161] Chilcoat argues that a jury could reasonably conclude that "Odell intended to stop the vehicle Chilcoat was riding in and to cause a harmful or offensive contact with Chilcoat, or, at the very least, to place Chilcoat in imminent apprehension of such contact."[162] However, the Undisputed Facts show that Odell lacked intent to cause these results.

First, while the Undisputed Facts show that Odell may have intended to have Mr. Dalton stop Chilcoat's vehicle,[163] the facts also show that Odell did not intend to cause harmful or offensive contact or apprehension of such contact to Chilcoat. After "Odell saw the Camper, he left his pickup truck, whistled at Mr. Dalton, pointed at the Camper, and took off running towards the Camper."[164] At best, Odell's whistling, pointing, and running to catch up to the Camper may reasonably lead a jury to believe Odell intended Mr. Dalton to stop the vehicle. These actions could not reasonably be interpreted to show Odell's intent to cause harm, offensive contact, or the apprehension of such contact.

This is true whether contact or apprehension was caused by Odell himself or by Mr. Dalton. Odell knew, based on the distance, that it was physically impossible for him to catch the

---

[160] *See D.D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 3 (Utah App. 1994) (quoting Model Utah Jury Instructions 10.18 (1993)).

[161] Restatement (Second) of Torts § 21, cmt. d (1965)) (emphasis in original).

[162] Opposition at 54.

[163] *See supra* Undisputed Facts ¶ 22 at 6 ("At the preliminary hearing, Odell stated that his purpose in running to catch the Camper was to stop the vehicle and see if the license plate on the Camper matched the picture from his trail camera."); *see also* Opposition, Exh. D at 55:4-10, 55:21-24 ("… so we can check the license plate to confirm it is a match"); Exh. G at 14:20 – 15:8 (Odell was running "to try to get to the road to stop and talk to them.")

[164] *Supra* Undisputed Facts ¶ 22 at 6.

26

Camper.[165] "[P]rior to spotting the Camper, [Odell] had only asked Mr. Dalton to keep an eye out for [the Camper]."[166] Outside of his whistling and pointing, "Odell did not provide any other cue or instruction."[167] Even assuming Odell intended that Mr. Dalton stop the Camper, once Mr. Dalton had raced past Odell and pulled his pickup across the road, that was the end of Odell's intent. Mr. Dalton's subsequent actions, such as "aggressively approach[ing]" the Camper's occupants and "running towards the driver's side, while gesturing and yelling at Chilcoat,"[168] are beyond Odell's potential intent that may have been implied by Odell's actions.

Second, once Odell caught up to the Camper, Odell's actions do not suggest an intent to cause offensive contact or apprehension of such contact. When Odell caught up to the Camper, Chilcoat testified that she "did not find Odell's behavior aggressive, nor did she think that Odell was intending to cause her harm."[169] In fact, Mr. Dalton continued to yell at Chilcoat and Mr. Franklin, while Odell remained mostly quiet, merely "affirming Mr. Dalton's actions and speech by nodding his head."[170] Odell's action of nodding his head does not reveal intent to cause physical or offensive contact or apprehension of such contact to Chilcoat.

Third, Odell's questioning of Mr. Franklin does not show an intent to cause offensive contact or apprehension of offensive contact. Throughout the rest of the encounter, Odell asked Mr. Franklin a series of questions about the gate.[171] While Mr. Franklin and Chilcoat remained in

---

[165] *Id.* ¶ 21 at 6.

[166] *Id.* ¶ 23 at 7.

[167] *Id.*

[168] *Supra* Undisputed Facts ¶ 28 at 7.

[169] *Id.* ¶ 30 at 8.

[170] *Id.* ¶ 31.

[171] *Id.* ¶ 33.

27

the Camper, "Odell did not touch the vehicle," "nor did he attempt to enter it."[172] Once Dep. Begay, Odell, and Mr. Franklin started walking towards the Corral, "Mr. Odell asked Mr. Franklin questions about whether Mr. Franklin knew this was state trust land versus public land, why Mr. Franklin closed the gate, and where Mr. Franklin was from."[173] While Mr. Franklin characterized this as an interrogation, Dep. Begay described it as a debate.[174] Whether this was a debate or an interrogation, Odell's communications with Mr. Franklin does not point to an intent to cause offensive contact or apprehension of such contact.

Additionally, Chilcoat quotes the Order Denying Odell's Motion to Dismiss[175] which found Chilcoat's assault claim was sufficiently pled.[176] In that order, the well-pleaded facts in Chilcoat's Complaint,[177] taken as true, described: "Odell and two other men physically blocked the road with their vehicle."[178] On summary judgment, however, the Undisputed Facts show that Mr. Dalton was the only actor who blocked the road and that Odell remained back on the side of the road.[179] The facts also show that, while Chilcoat later recounted that she feared for her safety, she never told Mr. Franklin that she felt there was an imminent threat she would be struck, or

---

[172] *Id.* ¶ 34.

[173] *Id.* ¶ 54 at 11.

[174] *Id.*; *see also* Motion, Exh. E, 74-16 - 74-18 (Dep. Begay also recounted that Odell and Franklin "were beginning to get louder and cutting each other's sentences off," but that he did not feel that there was a risk of physical confrontation.)

[175] Memorandum Decision and Written Order Denying Odell's Motion to Dismiss ("Order") at 7-8, docket no. 62, filed March 30, 2020.

[176] *See* Opposition, *supra* note 7, at 53 ("The Court earlier found sufficient allegations that '[Chilcoat] was traveling on a county road, that Odell and two other men physically blocked the road with their vehicle, refused to explain why they were detaining her and her husband, and told her that she would be going to jail.' The Court concluded it could be 'reasonably inferred' that Odell acted with the 'intent to cause [an] apprehension of an immediate harmful or offensive contact….'")

[177] Complaint, *supra* note 1, ¶ 7.

[178] Order, *supra* note 174, at 7-8.

[179] *Supra* Undisputed Facts ¶ 24 at 7.

that Mr. Dalton, Odell, or Mr. Weaver were going to attack her.[180] While Mr. Franklin later testified he was generally "concerned for his safety," he also stated that he did not feel an imminent threat of being struck, or an imminent threat that any of them were going to physically attack him.[181] Further, Chilcoat never attempted to call 911, and did not express any fear or concern to Dep. Begay while he was at the scene.[182] Unlike the facts in Chilcoat's State Complaint, the Undisputed Facts fail to demonstrate an intent to cause an apprehension of offensive contact on the part of Odell, no reasonable jury could find otherwise.

Therefore, the Undisputed Facts show that Odell had no intent to cause harmful or offensive contact or apprehension of such contact to Chilcoat. At best, Odell's actions of whistling and pointing to the Camper signaled to Mr. Dalton to stop the Camper. And Odell's questioning of Mr. Franklin fails to reflect an intent to cause an assault. The bulk of Mr. Dalton's more contentious actions were without any prompting by Odell. Accordingly, based on the Undisputed Facts, a jury could not reasonably conclude that Odell had the requisite intent to cause harm or apprehension of harm.

---

[180] *See id.* ¶¶ 40-41 at 9.

[181] *Id.*

[182] *Supra* Undisputed Facts ¶ 36.

29

## ORDER

IT IS HEREBY ORDERED that Odell's Motion[183] is GRANTED. Chilcoat's claims against Odell are DISMISSED with prejudice.

Dated February 4, 2021.

BY THE COURT:

_____

David Nuffer
United States District Judge

---

[183] Docket no. 69, filed October 16, 2020.

30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSALIE CHILCOAT, <br><br> Plaintiff, <br><br> v. <br><br> ZANE ODELL <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING ROSALIE CHILCOAT'S MOTION FOR SUMMARY JUDGMENT** |
| ZANE ODELL, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> ROSALIE CHILCOAT AND MARK FRANKLIN <br><br> Counterclaim Defendants. | Case No. 4:19-cv-00027-DN-PK <br><br> District Judge David Nuffer |

This case arises out of a dispute between a rancher and wilderness advocates. Zane Odell ("Odell"), the rancher, discovered that Mark Franklin ("Franklin") had closed a cattle gate at his corral in the Spring of 2017, and Odell accused Rosalie Chilcoat ("Chilcoat") and Franklin, her husband, of trespassing. A state criminal prosecution of Chilcoat and Franklin was dismissed. Chilcoat then filed this case, alleging claims of civil assault and constitutional violation claims against Odell.[1] Those claims are now dismissed.

---

[1] Complaint and Jury Demand ¶¶ 8-10, docket no. 2, filed April 10, 2019.

This order deals with Odell's Counterclaim.[2] Odell alleges that Chilcoat and Franklin conspired to commit private and public nuisance in the gate closing incident. Odell also requests injunctive relief.

Chilcoat and Franklin's Motion for Summary Judgment ("Motion")[3] argues that Odell has no evidentiary basis for his claims.[4] Odell responds primarily by pointing to Franklin's plea of no contest in the state criminal prosecution, arguing that Franklin "has already admitted to his injurious and criminal acts."[5]

Because a jury could not reasonably conclude that Chilcoat or Franklin committed or conspired to create or created a private or public nuisance, their Motion[6] is GRANTED.

**Contents**

UNDISPUTED FACTS ................................................................................................... 3
    The Counterclaim........................................................................................................ 3
    Odell's Deposition ...................................................................................................... 4
    Odell's Disclosures .................................................................................................... 6
    Odell's Responses to Chilcoat's Discovery............................................................... 6
    Counterclaim Defendants' Discovery to Odell.......................................................... 7
    Franklin's Deposition Testimony .............................................................................. 7
    Chilcoat's Deposition Testimony ............................................................................ 10
    Franklin's Criminal Case ......................................................................................... 11
STANDARD OF REVIEW ......................................................................................... 11
    Admissibility of Evidence on Summary Judgment Motion...................................... 12
DISCUSSION............................................................................................................... 12
    Odell's civil conspiracy claim fails because there was no object to be accomplished ..... 13
    Odell's public nuisance claim fails because  there was no unlawful act and no resulting
        damages............................................................................................................ 15
    Odell's private nuisance claim fails because there was no substantial invasion. ............. 16
    Odell fails to demonstrate irreparable harm unless the injunction is issued..................... 17
ORDER.......................................................................................................................... 19

---

[2] Answer & Counterclaim, docket no. 43, filed November 13, 2019.

[3] Counterclaim Defendant Rosalie Chilcoat's Motion for Summary Judgment ("Motion"), docket no. 67, filed October 15, 2020.

[4] Motion at 10-11.

[5] Odell's Memorandum in Opposition to Chilcoat's Motion for Summary Judgment ("Opposition"), docket no. 92 at 11, filed November 30, 2020.

[6] Docket no. 67, filed October 15, 2020.

2

## UNDISPUTED FACTS

These undisputed facts were determined by careful examination of Chilcoat and Franklin's Statement of Undisputed Material Facts in their Motion;[7] Odell's Response to Counterclaim Plaintiffs' Statement of Disputed Material Facts in his Opposition;[8] and Chilcoat's Reply to Odell's Response to Mark and Rose's Statement of Facts.[9] Assembly of these undisputed facts also considered Odell's Statement of Additional Material Facts in his Opposition[10] after considering Mark and Rose's Reply to Odell's Additional Facts which was essentially a Motion to Strike.[11]

A key location in these facts is a cattle corral of Mr. Odell's in San Juan County, Utah ("the Corral").

### The Counterclaim

1.      As part of his cattle ranching operation, in the Spring of 2017, Counterclaim Plaintiff Zane Odell had a permit to run cattle on various public lands including U.S. Bureau of Land Management ("BLM") and Utah the School and Institutional Trust Lands Administration ("SITLA") property in an area north of Utah Highway 163, in the Lime Ridge area of San Juan County. The land at issue is known as the Perkins North Allotment.[12]

---

[7] Motion ¶¶ 1-43 at 3-10.

[8] Opposition at 2-9.

[9] Counterclaim Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Reply"), docket no. 95, filed December 14, 2020. at 2-5.

[10] Opposition ¶¶ 1-5 at 9.

[11] Reply at 5-7

[12] *See* Motion ¶ 1 at 3-4, citing Exh. A ¶ 8 at 20 (Odell's Counterclaim).

3

2.     On the Perkins North Allotment Odell had established and maintained a corral, which contained a watering trough for cattle.[13]

3.     When cows needed access to the water using this trough, Odell chained the gate to the corral open, to ensure that the cattle were not prevented from reaching their water source by the gate closing from wind or otherwise.[14]

4.     Odell's Counterclaim alleges causes of action of (1) Civil Conspiracy, (2) Nuisance, (3) Public Nuisance, and (4) Injunctive Relief.[15]

### Odell's Deposition

5.     Since he was around ten years old Odell has made a living with either a horse or a cow and has been working with these animals. He has also driven a truck during this time. Odell has operated his cattle business within the last ten years under his name as an individual, not under an LLC or corporation.[16]

6.     Odell has one person who helps him from time to time.[17]

7.     The gate of the corral was 12-14 feet wide.[18]

8.     On April 1, 2017, Odell drove by the corral, early that morning, and saw the gate was open.[19]

---

[13] *Id.* ¶ 2 at 4, citing Exh. A ¶ 9 at 20.

[14] *Id.* ¶ 3 at 4, citing Exh. A ¶ 10 at 20.

[15] *Id.* ¶ 4 at 4, citing Exh. A at 24-29.

[16] *Id.* ¶ 5 at 4, citing Exh. B at 9:16-10:19 (Odell Deposition); see also, Exh. B, at 9:16-10:19."

[17] *Id.* ¶ 6 at 4, citing Exh. B at 10:20-12:10; see also, Motion, Exh. B, at 10:20-12:10."

[18] *Id.* ¶ 7 at 4, citing Exh. B at 19:9-19:18.

[19] *Id.* ¶ 8 at 4, citing Exh. B at 20:8-20:18.

4

9. 50 yards away from the gate was an open area in the fence that was about 10 feet wide.[20]

10. On April 1, 2017, in that 10 foot open gap of the fence, there was nothing preventing the cattle from entering or exiting the corral.[21]

11. On April 1, 2017, Odell returned back to the corral about 6:00 p.m.[22]

12. The weather on April 1, 2017 was cloudy and rainy.[23]

13. Odell's game camera photographed Franklin and Chilcoat's camper at the corral on April 1, 2017. The photographs showed a time stamp of 2:40 p.m. and 2:48 p.m., Mountain Daylight Time. However, Odell later indicated that, due to some confusion on setting the clock to daylight savings time, the actual time was 1:40 p.m. and 1:48 p.m.[24]

14. The sheriff's dispatch call recording dated April 1, 2017 where Odell called San Juan County Sheriff was played at the deposition of Odell which at one point records Odell stating to Sheriff's dispatch: "Now what they don't know, or maybe they figured out too late, we had the fence cut where we were drilling a well. So no harm was done, the cows did go around the corner and get in, to get a drink of water. So I don't have any dead cows."[25]

15. Odell has not sustained any cash losses as a result of this instance of gate closing. However, Odell has stated that he has suffered damages related to the gate closing such as the

---

[20] *Id.* ¶ 9 at 4-5, citing Exh. B at 21:5-21:118.

[21] *Id.* ¶ 10 at 5, citing Exh. B at 21:12-21:16.

[22] *Id.* ¶ 11 at 5, citing Exh. B at 21:22-22:1.

[23] *Id.* ¶ 12 at 5, citing Exh. B at 22:5-22:10.

[24] *Id.* ¶ 13 at 5, citing Exh. B at 23:25-25:6; *see also* Motion, Exh. B, at 23:25-25:6."

[25] *Id.* ¶ 14 at 5, citing Exh. B at 27:4-28:6.

5

loss of time and money due to his having to patrol his property, the general wear and tear that comes with patrolling that property, possible devaluation of his allotment, and legal fees.[26]

16.     Odell admitted that due to this gate closing incident, no cattle got sick, no veterinarian bills were incurred, no sale of cattle was affected, and no employees went unpaid.[27]

17.     It was possible to see the 10 foot opening in the fence from the water trough in the corral.[28]

**Odell's Disclosures**

18.     On July 16, 2019, Odell made his Initial Disclosures and under Section C., "Damages," stated: "Defendant Odell is not claiming any economic damages at this time but is reserving his right to bring affirmative claims in the future, and to claim his attorneys fees, costs, court fees, pre-judgment and post-judgment interest, and expert witness fees, as allowed by law, and any and all other costs and fees allowed by law."[29]

**Odell's Responses to Chilcoat's Discovery**

19.     In Odell's Responses to Counterclaim Defendants' First Set of Written Discovery, Odell responded as follows:

> INTERROGATORY NO. 1: Please describe and/or itemize in reasonable detail any and all damages upon which you base your Counterclaim against Counterclaim Defendants. In so doing, please identify each document(s) supporting such claim, each witness who would testify in support of such, the nature thereof and describe the method by which the damages were calculated.
> Response: Documents responsive to this request have been previously attached to Defendant's Responses to Plaintiff's Interrogatories and

---

[26] *Id.* ¶ 15 at 5, citing Exh. B at 28:8-29:21; *see also* Motion, Exh. B, at 28:8-31:2.

[27] *Id.* ¶ 16 at 5, citing Exh. B at 31:5-31:19.

[28] *Id.* ¶ 17 at 6, citing Exh. B at 89:3-89:17; *see also* Motion, Exh. B, at 88:9-89:17.

[29] *Id.* ¶ 18 at 6, citing Exh. C at 4-5 (Odell's Initial Disclosures).

6

Requests for Production of Documents and have been sent to Counterclaim Defendants and/or are forthcoming.[30]

## Counterclaim Defendants' Discovery to Odell

20.     Counterclaim Defendants' First Set of Written Discovery contained a Request for Admission, to which Odell never responded, which states: "REQUEST FOR ADMISSION NO. 1: Admit that you have sustained no damages resulting from the Incident."[31]

## Franklin's Deposition Testimony

21.     Sometime in the late afternoon of April 1, 2017, before 3:30 p.m., Mark Franklin pulled off of a county road, toward Odell's corral.[32]

22.     Franklin stopped his vehicle on the north side of the corral, near a manhole, near the area where the fence had been peeled back creating an opening in the fence, urinated, then got back in his vehicle and drove toward where the green gate was, the green gate that a few minutes later, he closed. Franklin admits that both he and Chilcoat understand and admit that they knew they were leaving the gate in a locked position and that this was different than how they had found it.[33]

23.     As he reached the gate in his vehicle, Franklin saw there were about 15 cows in the corral, two of which had their heads inside of what he thought was a feed trough, noticing that the cattle were not chewing, he wondered what was in the feed trough.[34]

---

[30] *Id.* ¶ 19 at 6, citing Exh. D at 3 (Odell's Responses to Counterclaim Defendants' First Set of Written Discovery).

[31] *Id.* ¶ 20 at 7, citing Exh. E at 4 (Counterclaim Defendants' First Set of Written Discovery).

[32] *Id.* ¶ 21 at 7, citing Exh. F at 9:15-11:25 (Mark Franklin Deposition); *see also id.*, Exh. F, at 9:15-11:25, 22:4-25:3.

[33] *Id.* ¶ 22 at 7, citing Exh. F at 12:1-12:24.

[34] *Id.* ¶ 23 at 7, citing Exh. F at 15:15-16:14.

7

24.     Franklin then left his vehicle, walked at a diagonal back to the trough in the corral, and realized it was not a feed trough but rather a water trough.[35]

25.     While at the water trough, Franklin noted that cattle moving through the cut opening in the fence back near the area where he urinated.[36]

26.     Franklin looked up and saw a big white cow with long horns and black stripes at the edge of the fence, walking east. This cow looked at Franklin and gave Franklin the "stink eye." At about this same time, two other cows, further to Franklin's right, were going north along the inside of the corral heading to the back side of Franklin. Franklin felt like he would soon be "surrounded" or cut off from getting to his vehicle.[37]

27.     Franklin later testified that he and Chilcoat have a history of association with the Great Old Broads,[38] a wilderness advocacy organization.[39]

28.     Franklin also stated that they had heard Odell's name before and that Chilcoat had documented land associated with ranchers in that area. Franklin and Chilcoat found Odell's work and activities as a rancher to be worthy of documentation, in part because, in Franklin's mind, Odell had made "big, in your face, ugly scars on the landscape…."[40]

29.     At this point, Franklin walked from the trough to the green gate which was open at the time and pulled the gate toward the closed position which he says was so the cows could not get behind him and he continued to watch the cows.[41]

---

[35] *Id.* ¶ 24 at 7, citing Exh. F at 16:14-16:17.

[36] *Id.* ¶ 25 at 7, citing Exh. F at 17:15-18:7; *see also id.*, Exh. F at 26:7-12.

[37] *Id.* ¶ 26 at 7-8, citing Exh. F at 18:10-19:10.

[38] *Id.*, Exh. F at 8:11-14, 70:23-71:11, 79:2-80:8, 80:21-83:22.

[39] https://www.greatoldbroads.org/ (last visited February 20, 2021).

[40] Motion Exh. F at 8:11-14, 70:23-71, 79:2-80:8.

[41] *Id.* ¶ 27 at 8, citing Exh. F at 20:5-20:25.

8

30.     Franklin watched cows going out of the open fence on the far corner, cows from pasture were trotting toward the corral, there was a "milling of cows" in front of the open fence in the far corner, he was watching the cows coming and going.[42]

31.     After observing the cows with the gate approximately 90% closed, Franklin pulled the gate to the closed position, stepped outside the corral, and wrapped and secured the chain in the gate latch.[43]

32.     Franklin closed and latched the gate, without thinking about it. Franklin has been around gates and public land "all [his] life" and the gate needed to be closed in his mind, despite the fact he did not own it, despite the fact he did not know who owned it.[44]

33.     Franklin then got in his car. The total amount of time that he spent at the trough, in the corral, and at the gate was about 3-4 minutes total.[45]

34.     Franklin's wife Rose Chilcoat had been in the passenger seat in the car the entire time during Franklin's two exits from the vehicle, one to urinate, and his 2nd exit to observe the trough, corral, and cattle.[46]

35.     As Franklin started the car and began driving away, Chilcoat reminded him that he had just closed a gate, which was open when they arrived. Franklin responded by saying: "It does not matter. The cows are coming and going through that other entrance."[47]

36.     Chilcoat expressed her disagreement with Franklin for his closing of the gate.[48]

---

[42] *Id.* ¶ 28 at 8, citing Exh. F at 21:2-21:18.

[43] *Id.* ¶ 29 at 8, citing Exh. F at 21:19-22:9.

[44] *Id.* ¶ 30 at 8, citing Exh. F at 22:10-24:10.

[45] *Id.* ¶ 31 at 8, citing Exh. F at 25:5-25:12.

[46] *Id.* ¶ 32 at 8, citing Exh. F at 25:3-25:23.

[47] *Id.* ¶ 33 at 8, citing Exh. F at 25:24-26:12.

[48] *Id.* ¶ 34 at 8, citing Exh. F at 29:3-29:16.

9

37.  Franklin does not dispute the game camera time stamps of his vehicle at 2:40 p.m. and 2:48 p.m.[49]

**Chilcoat's Deposition Testimony**

38.  April 1, 2017, Chilcoat was a passenger in a car with her husband Franklin driving when Franklin pulled over to a corral off of a county road. Chilcoat was "peeved" at her husband for doing so because they were late to meet friends to go hiking that afternoon and they had just recently stopped for gas.[50]

39.  Chilcoat had no interest in going to the subject corral that day and so she remained in the vehicle while she checked messages on her cellular telephone.[51]

40.  Franklin got out of the vehicle, relieved himself, and got back in the vehicle after several minutes.[52]

41.  After this, Franklin drove their vehicle to the gate of the corral.[53]

42.  Chilcoat observed Franklin within the corral, observed Franklin approach the tire structure (trough), and then return to the car. However, during most of the time that Franklin was outside the vehicle, she was focused on her cell phone and newspaper.[54]

43.  Before getting back into the vehicle, Franklin pulled the previously open gate shut and latched it.[55]

---

[49] *Id.* ¶ 35 at 8, citing Exh. F at 29:19-31:11.

[50] *Id.* ¶ 36 at 8, citing Exh. G at 9:24-11:7 (Chilcoat Deposition); *see also id.*, Exh. F, at 8:11-14, 70:23-71:11, 79:2-80:8, 80:21-83:22.

[51] *Id.* ¶ 37 at 8, citing Exh. G at 14:12-14:22.

[52] *Id.* ¶ 38 at 8, citing Exh. G at 14:23-15:15.

[53] *Id.* ¶ 39 at 8, citing Exh. G at 15:16- 16:18.

[54] *Id.* ¶ 40 at 8, citing Exh. G at 16:19-17:18.

[55] *Id.* ¶ 41 at 9, citing Exh. G at 17:19-18:15.

10

44.     After Franklin got into the vehicle, Chilcoat turned to Franklin and asked: "What are you doing? And [Franklin] looked at me startled like, as if he didn't know what I was asking." Chilcoat asked Franklin this question because Franklin shut the gate which had been previously open, and Franklin appeared to be unaware of that fact or his actions closing and latching the gate.[56]

45.     The day that Franklin closed the gate Chilcoat did question his closing of the gate, disapproved of his closing of the gate because there was no reason to do it, normally you do not close a previously open gate, generally speaking, you leave things [gates] as you find them.[57]

### Franklin's Criminal Case

46.     Franklin entered a plea in abeyance of no contest to two misdemeanor charges or trespassing on public lands and attempted criminal mischief on April 1, 2019.[58]

47.     The events charged allegedly occurred April 1, 2017.[59]

48.     The charges have been dismissed with prejudice.[60]

### STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue

---

[56] *Id.* ¶ 42 at 10, citing Exh. G at 18:16- 19:12.

[57] *Id.* ¶ 43 at 10, citing Exh. G at 22:19-23:7.

[58] Statement in Advance of Plea of No Contest and Order that Pleas be Held in Abeyance, *State of Utah vs. Mark Kevin Franklin*, Case No. 171700040, Utah Seventh Judicial District Court. Attachment A to Opposition.

[59] *Id.*

[60] Docket May 13, 2020, *State of Utah vs. Mark Kevin Franklin*, Case No. 171700040, Utah Seventh Judicial District Court.

[61] Fed. R. Civ. P. 56(a).

11

either way."[62] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[63]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[64]

### Admissibility of Evidence on Summary Judgment Motion

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[65] "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."[66]

### DISCUSSION

Odell claims Chilcoat and Franklin committed civil conspiracy, public nuisance, and private nuisance. Odell has failed to create a disputed issue of material fact to support any of these claims. The gate closing resulted in no harm to Odell's cattle as the 10-foot gap in the fence allowed access to the water. Additionally, the primary and most frequently cited piece of evidence in Odell's Memorandum in Opposition, Franklin's plea of no contest, is inadmissible. For these reasons, Chilcoat's Motion for Summary Judgment is granted.

---

[62] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[63] *Id.*

[64] *Id.* at 670-71.

[65] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (citations and quotation marks omitted).

[66] *Id.* at 999 n.15 (citations and quotation marks omitted).

12

**Odell's civil conspiracy claim fails because there was no object to be accomplished**

In order to prove civil conspiracy, a plaintiff must show: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof.[67] While Odell may have evidence of the first requirement, Odell fails to demonstrate proof of the remaining elements.

First, there was no object to be accomplished nor a meeting of the minds towards that object. Franklin stopped his vehicle by Odell's corral and urinated.[68] He then closed the gate in front of him.[69] Chilcoat knew nothing about Franklin's purpose for closing the gate; she merely waited in the vehicle while she checked messages on her phone and read the news. Not even Franklin knew why he closed the gate, except that it was a force of habit.[70] No material evidence indicates that these actions were some form of object, goal, or scheme, or that Chilcoat and Franklin had previously discussed that goal.

In arguing of an existence of an object to be accomplished and a meeting of the minds, Odell points out Franklin and Chilcoat's affiliation with the Great Old Broads. He also highlights that Chilcoat and Franklin found Odell's work and activities as a rancher to be worthy of their attention and documentation, in part, because they believed he was guilty of "big, in your face, ugly scars on the landscape…."[71] While these facts may reveal a conceivable motive, they fail to demonstrate that Chilcoat and Franklin had a common goal or object on the day the gate was

---

[67] *See Peterson v. Delta Air Lines*, 2002 UT App 56, ¶ 12, 42 P.3d 1253, 1257 (Utah Ct. App. 2002) (quoting *Alta Indus. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993) (citation omitted)).

[68] *See supra*, Undisputed Facts ¶ 22.

[69] *Id.* ¶ 29.

[70] *See* Chilcoat's Motion at 11.

[71] *See id.*, Exh. F, 83:14-22.

closed. Nothing in the facts that shows either Franklin or Chilcoat carrying out or communicating about a plan. Odell's argument merely shows a common interest in protecting the environment.

Second, there was no unlawful, overt act. The unlawful, overt act must be an underlying tort.[72] Odell argues that Franklin has already been prosecuted for criminal acts directed at Odell and has already specifically admitted to those criminal acts. However, these alleged admissions are inadmissible under Fed. R. Evid. Rule 410(a), which prohibits the use of evidence of a guilty plea that was later withdrawn. Additionally, the document has no admissions; but merely recited the elements of the alleged crimes to which Franklin signed his name. Franklin did not specifically give any detail or narrative of those facts. Under the Undisputed Facts on this Motion, Franklin shut a gate to the Corral knowing the cattle were using another entrance. There is no admissible evidence that Franklin or Chilcoat performed an unlawful act.

Third, Odell has failed to prove damages. Throughout the record on this motion, there is no evidence of harm or loss to the Corral or Odell's cattle operation. Odell emphasizes that he did actually assert damages.[73] However, the only evidence he provides is an otherwise unsupported assertion in his deposition that "he has suffered damages related to the gate closing such as the loss of time and money due to his having to patrol his property, the general wear and tear that comes with patrolling that property, possible devaluation of his allotment, and legal fees."[74] These assertions are not enough to prove the damages element. Odell's property interests have not been harmed. There was another opening in the fence, approximately 50 yards from the

---

[72] *See Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024, 1029 (citing *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971 (alteration in original) (quoting *Coroles v. Sabey*, 2003 UT App 339, ¶ 36, 79 P.3d 974)).

[73] Odell's Opposition at 11.

[74] *See id.* at 3; *see also supra*, Undisputed Facts ¶ 15.

14

gate, through which the cattle were using during the 3-4 hour window when the gate was closed. Thus, Franklin shutting the corral gate did not affect Odell's cattle operation. There was no loss of cattle, no loss of sales, and no effect on Odell's ability to profit from his business.

Odell has had time to provide some form of concrete calculation or production of evidence of damages, yet he has failed to produce such evidence.[75] In his Initial Disclosures, Odell failed to a disclose damage calculation and has made no subsequent disclosures.[76] Odell was also requested to provide evidence of and/or a calculation of his damages, but again Odell failed to provide any evidence or calculation.[77] Odell failed to respond to Request for Admission No. 1, which stated: "Admit you have sustained no damages resulting from the Incident."[78] Fed. R. Civ. P. Rule 36(a)(3) states: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." In his deposition, Odell was asked about damages he had sustained as a result of gate closing incident and Odell admitted he had sustained no monetary damages.[79] There is no evidence of damages.

### Odell's public nuisance claim fails because there was no unlawful act and no resulting damages

In order to prove public nuisance in a private action, a plaintiff must establish: (1) the alleged nuisance consisted of "unlawfully doing any act or omitting to perform any duty;"[80] (2) the "act or omission . . . in any way render[ed] three or more persons insecure in life or the use of

---

[75] FRCP Rule 26(a)(1)(iii) requires every party disclose a computation of each category of damages claimed.

[76] *See supra*, Undisputed Facts ¶ 18.

[77] *Id.* ¶ 19.

[78] *Id.* ¶ 20.

[79] *Id.* ¶¶ 14-16.

[80] Utah Code Ann. § 76-10-803(1).

15

property;"[81] (3) Odell "suffered damages different from those of society at large;"[82] (4) the defendants caused or are responsible for the nuisance complained of; and (5) the "defendant[s'] conduct was unreasonable."[83] "[P]ublic nuisances are only those occurrences that impact the order and economy of the state or the public at large."[84]

Here, Odell fails to respond to this argument; he only responds to the private nuisance claim. Even so, no juror would find for Odell under public nuisance for several reasons. There was no unlawful act; three or more people were not rendered insecure in life or the use of property; Odell has not suffered any damages at all, let alone damages different from those of society at large. The gate closure has not impacted the interest, order, or economy of the state or the public at large. Thus, Odell's public nuisance claim fails.

**Odell's private nuisance claim fails because there was no substantial invasion.**

To claim private nuisance a plaintiff must show an interference with an individual's use and enjoyment of land.[85] Odell must establish: (1) a substantial invasion in the private use and enjoyment of land, (2) caused by Chilcoat or Franklin, and that (3) "the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable."[86] "Unlike most other torts, [private nuisance law] is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded." Thus, "private nuisance has reference to the interests invaded, to the damage or harm

---

[81] *Id.* § 76-10-803(1)(e).

[82] *Erickson v. Sorensen*, 877 P.2d 144, 148 (Utah Ct. App. 1994) (citations omitted).

[83] *Id.* at 148-49.

[84] *See* Utah Code Ann. § 76-10-803 (2003); *Solar Salt Co. v. Southern Pac. Transp. Co.*, 555 P.2d 286, 289 (Utah 1976) (("To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." (internal quotation marks omitted))

[85] W. Page Keeton et al., Prosser on Torts § 87, at 619 (5th ed. 1984).

[86] *Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 21, 190 P.3d 1, 8-9.

16

inflicted, and not to any particular kind of action or omission which has led to the invasion[.]" In other words, private nuisance liability "is predicated upon unreasonable injury rather than upon unreasonable conduct."[87]

Odell has not presented evidence to satisfy the substantial invasion prong of the test, which looks to damage caused by the nuisance. As discussed in depth above,[88] because there was a hole in the gate, the cattle were not harmed and there were essentially no damages. In fact, at the time of the gate closing, Franklin knew the hole was there.[89] And Odell's unsubstantiated recitation of speculative damages in his deposition is not enough to meet the substantial invasion standard. Even if Odell's list of damages were supported with some evidence, there is nothing substantial about them because the closed gate did not cause any harm to the cattle or Odell's operation.[90]

### Odell fails to demonstrate irreparable harm unless the injunction is issued

The claim for injunctive relief is a request for a remedy, not a separate cause of action.[91] The growing tendency of lawyers to include a separate claim for equitable relief as a cause confusion wrongly suggests that a claim for a remedy can stand alone, apart from any basis for relief. Because all of Odell's claims fail, no injunction will issue.

---

[87] *Branch v. Western Petroleum, Inc.*, 657 P.2d 267, 274 (Utah 1982) (emphasis added) (internal quotation marks omitted); *accord* Restatement (Second) of Torts § 822 cmt. b (1979); *Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 22, 190 P.3d 1, 8-9.

[88] *See supra* at 14-15 (discussing damages).

[89] *See supra*, Undisputed Facts ¶ 22.

[90] *See id.* ¶¶ 14-16.

[91] *Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1046 (D. Minn. 2013) (citing *Motley v. Homecomings Fin., LLC,* 557 F.Supp.2d 1005, 1014 (D. Minn. 2008). *See also Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n, 238 F. Supp. 3d 1257, 1267 (D. Nev. 2017)* (citing *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed.Appx. 680, 684 (9th Cir. 2014).

17

To grant a permanent injunction, a district court must find: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing parties; and (4) the injunction, if issued, will not adversely affect the public interest."[92] A permanent injunction cannot be granted if any requirement has not been met. *Id.*

Without a claim, Odell cannot prove success on the merits.

Proving irreparable harm is not "an easy burden to fulfill."[93] Courts do not find harm "irreparable" unless a petitioner can show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."[94] "Purely speculative harm will not suffice, but '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied this burden.'"[95] Odell has failed to meet the injunction standard. No irreparable harm will occur if an injunction is not issued. According to the Undisputed Facts, no harm resulted from Franklin's shutting of the gate. Odell's concerns that Chilcoat and Franklin will return to harm Odell or his property are unfounded speculation.[96]

Without a threatened injury the harm that the injunction may cause is unjustified.

An injunction, if issued, would adversely affect the public interest.

---

[92] *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).

[93] *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

[94] *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016).

[95] *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011); *Schell v. OXY USA, Inc.*, 822 F. Supp. 2d 1125, 1142 (D. Kan. 2011) (declining to impose a permanent injunction because "plaintiffs have failed to show that money damages would not be sufficient to compensate any potential future injury" resulting from the defendants' termination of free gas to the plaintiffs)).

[96] *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) ("Purely speculative harm will not suffice.").

18

# ORDER

IT IS HEREBY ORDERED that Chilcoat's Motion[97] is GRANTED. Odell's claims

against Chilcoat and Franklin are DISMISSED with prejudice.


Signed February 23, 2021.


BY THE COURT

David Nuffer
United States District Judge

---

[97] Counterclaim Defendant Rosalie Chilcoat's Motion for Summary Judgment ("Motion"), docket no. 67, filed October 15, 2020.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROSALIE CHILCOAT, an individual<br><br>Plaintiff,<br><br>v.<br><br>ZANE ODELL,<br><br>Defendant. | **JUDGMENT IN A CIVIL CASE**<br><br>Case No. 4:19-cv-00027-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

IT IS HEREBY ORDERED AND ADJUDGED THAT,

Judgment is entered in favor of Zane Odell on Plaintiff's causes of action and in favor of

Rosalie Chilcoat and Mark Franklin on Mr. Odell's counterclaims. The action is DISMISSED

with prejudice. The clerk is directed to close the action.


Signed February 24, 2021.


BY THE COURT:

_____
David Nuffer
United States District Judge